REYNOLDS CORP. *v.* KNOXVILLE LITHOGRAPHING CO.

(*Knoxville.* September Term, 1917)

1.  **INJUNCTION.** Restraining action at law. Requiring confession of judgment.

It is the duty of a judgt or chancellor, granting an injunction to restrain the prosecution of an action at law, to exact of complainant a confession of judgment in the law case as a condition of granting an interlocutory injunction retaining, however, control of the judgment so confessed, in order that no injustice may be done on the final decision of the injunction suit. (*Post, pp.* 292-294.)

Cases cited and approved: Chadwell v. Jordan, 2 Tenn., ch. 635; 'Mathews v. Douglass, 3 Tenn., 136; Haynes v. Bank, 106 Tenn., 425.

2.  **ESTOPPEL.** Change of decision in judicial proceedings.

Where, in a suit to restrain actions at law and to have the controversies determined in equity, the chancellor granted a fiat for an injunction without requiring complainant to confess judgment in the actions at law, defendant, by moving to dissolve the injunction unless judgment was confessed, was not estopped from thereafter demurring to the bill, on the ground that no sufficient reason was shown to justify a defeat of the jurisdiction of the law court. (*Post, pp.* 292-294.)

3.  .**INJUNCTION.** Jurisdiction. Submission to jurisdiction. Effect.

Though, in a suit to restrain actions at law and have the controversy determined in equity, defendant by moving to dismiss an interlocutory injunction unless complainant would confess judgment in the actions at law, submitted to the court's jurisdiction over the person of defendant, this was not tantamount to submitting to the court's jurisdiction over the subject-matter of the controversy, so as to prevent a demurrer on the ground

that sufficient cause for interfering with the jurisdiction of the law court was not shown. (*Post, pp.* 294-296.)

4.   **EQUITY.   Jurisdiction.   Preventing multiplicity of suits.**

Where, though charges against complainant for lithographic work were entered on defendant's books under its general account against complainant, this was a mere matter of bookkeeping, and the charges were separate and distinct, defendant was not precluded from separating the charges for purposes of suit, and by bringing separate actions did not subject complainant to a multiplicity of suits, so as to entitle it to have the controversies determined in equity. (*Post, pp.* 296-298.)

5.   **EQUITY.   Jurisdiction.   Remedy at law.**

That, in an action for lithographic work defended on the ground that the work did not come up to the sample furnished when the contract was awarded, the proper solution of the controversy would depend upon expert testimony as to the nature and character of the paper to be engraved, and the quality of that furnished as compared with that which defendant contracted to furnish, did not entitle defendant to have cause heard in equity, as a court of law was as competent to hear and act on sluch evidence as the court of chancery. (*Post, pp.* 296-298.

6.   **INJUNCTION.   Suit for injunction.   Dismissal. Vacating confessed judgment.**

In a suit to restrain two actions at law for lithographic work, the bill denied any indebtedness, alleging, with respect to one item, that the work did not come up to the sample furnished, and that defendant had acted in such an arbitrary and unbusinesslike manner that complainant could not afford to do business with it, and, as to the second item, that complainant did not owe the account and that the reasons would be made to appear at the trial. It was further alleged that complainant was being annoyed with a multiplicity of suits, and that a proper solution of the controversy over the first item depended on expert testimony. *Held,* that a demurrer on the ground that no sufficient reason was shown to justify a defeat of the jurisdiction of the law court did not go to the merits of the defenses asserted to the

Reynolds Corp. v. Knoxville Lithographing Co.

actions at law and hence, on the sustaining of such demurrer, judgments which complainant was required to confess in the actions at law as a condition of granting an interlocutory injunction should be vacated and set aside. (*Post, pp.* 296-298.)

### 7. EQUITY. Demurrer to bill good in part.

While the statement of merits respecting plaintiff's defense to the second action at law was meager, a demurrer directed to the whole bill could not invalidate this special separable part of the bill not distinctly challenged. (*Post, pp.* 296-298.)

### 8. INJUNCTION. Suit for injunction. Dismissal. Vacating confessed judgment.

The power of a court of chancery, in a suit to enjoin actions at law, to vacate judgments which complainant is required to confess as a condition of the granting of an interlocutory injunction exists independent of any particular bill, and arises out of the court's duty to protect litigants against dangers arising from its own action. (*Post, pp.* 298-299.)

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —HAL. H. HAYNES, Chancellor.

H. H. SHELTON, HARR & BURROW and E. K. BACHMAN, for appellant.

WEBB, BAKER & McDERMOTT and ST. JOHN & GORE, for appellee.

138 Tenn.—19

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The Knoxville Lithographing Company having sued the Reynolds Corporation in two actions before a justice of the peace of Sullivan county, the latter company, before trial had at law, filed the present bill in the chancery court of Sullivan county, for the purpose of enjoining the further progress of the suits mentioned. The chancellor granted the injunction, but, in his fiat, omitted to require the complainant to confess judgment. After the injunction was served, the defendant appeared in the chancery court and made a motion in the following language:

"Comes the defendant and moves the court to dissolve the injunction heretofore granted and issued in this cause until, and unless, the complainant shall confess judgment in the suits at law sought to be enjoined herein."

The chancellor granted this motion and ordered that, unless the complainant should, on or before the 4th day of September, 1916, confess judgment in the two suits for the several demands sued on, together with costs, the injunction should stand dissolved; but that, in case the complainant should confess judgment on the two demands, then the injunction should operate to stay execution on such confessed judgments until the further order of the court. The order then recited that the Reynolds Corporation appeared by its solicitor and confessed judgment on each of the demands,

and agreed that the justice of the peace in question, J. P. Rader, might enter such judgments in the two causes pending before him, but that execution should be stayed by the injunction in the present cause as previously ordered.

After having secured this order, counsel for defendant then filed its demurrer to the bill.

The bill charged that one of the suits was based on an account for $262.08, for certain lithographing work which the defendant undertook to furnish to complainant, and the other was an account for $119.21 arising out of an order for "35,000 sheets, No. 16 speedway, and labor and profits on a canceled order for 500,000 coupons." The bill denied any indebtedness for the two sums, charging, with respect to the first, that the work did not come up to the sample furnished when the contract was awarded, and, likewise, that the defendant had acted in such an arbitrary and unbusinesslike manner that the complainant could not afford to do business with it as to this matter. As to the second item the bill did not state the objection to it further than a general allegation that the complainant did not owe this account, adding that reasons would be made to appear at the trial.

It is further alleged that the two amounts represented two items on the same account, and that the complainant was therefore being annoyed with a multiplicity of suits about the same matter. It was also alleged, with respect to the first matter, that its proper solution depended upon expert testimony as to the

nature and character of the paper to be engraved, and the quality of that furnished as compared with that which the defendant had contracted to furnish.

There were several grounds of demurrer stated, but they all went to the point that the court of law had first acquired jurisdiction, and no sufficient reason was shown in the bill to justify a defeat of that jurisdiction by a suit in equity.

The learned chancellor, and the learned court of civil appeals, when the case reached the latter court, overruled the demurrer, on the ground that the defendant, by its motion to dissolve the injunction, which we have just copied, had elected to submit to the jurisdiction of the chancery court, and was estopped to rely upon the demurrer. Accordingly the demurrer was overruled, an a special appeal was granted by the chancellor under the statute applicable to that subject, and the case was determined by the court of civil appeals in the manner just indicated. It is now before us on writ of certiorari.

We think that both courts were in error.

It is the duty of a judge or chancellor, granting an injunction to restrain the prosecution of an action at law, to exact of the complainant a confession of judgment in the law case as a condition of granting an interlocutory order for an injunction, retaining, however, control of the judgment so confessed, in order that no injustice may be done to either party on the final decision of the injunction suit. The purpose of this rule is to prevent the complainant's dismissing

Reynolds Corp. v. Knoxville Lithographing Co.

his suit after long litigation in equity, leaving the plaintiff at law to then resume his litigation. The principle is stated, and authorities cited in Gibson's Suits in Chancery, Revised Edition, section 814, text, and note 29; *Chadwell* v. *Jordan,* 2 Tenn. Ch., 635; *Mathews* v. *Douglass,* Cooke, 136, Fed. Cas. No. 9276; *Haynes* v. *Bank,* 106 Tenn., 425, 61 S. W. 775. Not having required the confession of judgment at the outset, the chancellor rightly sustained the motion when the point was called to his attention, and we are unable to see how the status of the defendant was in anywise different from that it would have occupied had the confession of judgment been required when the *fiat* for injunction was granted. It could not be said that the granting of such a *fiat* would bar the defendant from its right of demurring to the bill. How the failure of the chancellor to grant the order at the proper time could operate as a reason for denying the defendant its legal right to make defense upon a subsequent rectification of the chancellor's oversight, it does not appear. Or, to state the matter differently, it is not apparent how the chancellor's failure to require the confession of judgment at the beginning could legally so operate as to embarass the defendant in its subsequent effort to have done what should have been done at the beginning; the defendant not being at fault at any stage of the proceeding. To hold the defendant estopped to assert its right to file a demurrer, under such circumstances, would be equivalent to a decision that the error of a court committed against a litigant, without

fault or negligence of the latter, could lawfully result in depriving such litigant of a legal right. It needs no more than a mere statement of the contention to show its unsoundness.

It is urged in support of the ruling of the chancellor, and of the court of civil appeals, that the defendant, on making such a motion, must be considered as having submitted to the jurisdiction of the court, and that having done so it could not thereafter demur for want of jurisdiction; that otherwise the defendant would be permitted to occupy antagonistic positions. This argument arises out of a failure, as we think, to rightly discriminate between jurisdiction of the person and jurisdiction of the subject-matter. It is indeed true that by coming into court and making such a motion the defendant submitted to the personal jurisdiction of the court over it, but this was not tantamount to submitting to the jurisdiction of the court over the subject-matter of the controversy. The defendant, by process served on it, was called to come into the chancery court and defend its rights. As a preliminary thereto, it sought to have the chancellor safeguard those rights in the manner in which the law required of him. Then, as the next step in its defense, a demurrer was interposed, raising the point that the law court first obtained jurisdiction, and was entitled to retain the cases. This was a matter of defense. The defendant had acquired, by the institution of the suits at law, a valuable right, the right to have the legal forum, which it had chosen, to proceed and determine

the controversies.  The defendant could not certainly know whether the reasons assigned for coming into a court of equity would commend themselves to the chancellor.  As a safeguard, therefore, to ward off any injury that might accrue to its rights by a retention of the case in chancery, the application was made for a confession of judgment on the part of the complainant.  The two steps taken, the application for a confession of judgment, and the filing of the demurrer, seem to us to be parts of a well-devised scheme of defense, the two parts in thorough harmony.  There was another view which seemed to have a strong influence in controlling the decision of the two lower courts, and which, indeed, seems to have prompted the conception of the theory of estoppel.  That other view was that if the demurrer should be sustained, as it seemed to both courts must be the result of a hearing, there might be a grave injustice wrought upon the complainant; that is, the determination of its rights without being heard on the merits.  We think this thought was induced by a misconception of *Haynes* v. *Bank,* supra.  That case, however, is authority only for this proposition, viz.: That where a suit at law, based upon a promissory note for a definite amount of money, is enjoined by bill in chancery, and that bill contains a statement of the only defense which the complainant has against the note, and that defense, conceding the facts on which it is based, is not good in law, and it is so held on demurrer, then the court, having all the parties before it and the whole controversy in hand, should not

send them back for any further litigation, but should close the controversy by rendering a judgment against the complainant for the amount of the note. The only defense asserted in that bill against the bank was that usury had been exacted of him, and paid to an amount more than the note sued on. It was a national bank, and the objection was made by demurrer that under. the federal law usury could not be invoked as an off-set, but availed of only as a penalty. There being no other defense, and this defense being utterly destroy-ed, as stated, the court deemed it idle to send the par-ties back, and so rendered judgment against the com-plainant in the injunction bill for the amount that he admitted owing in the event he could not use his alleg-ed offset.

The case just referred to has no bearing upon the present controversy. The demurrer does not question the merits on which the complainant bases its defense, but only the right of the complainant to come into a court of chancery. The right to come into chancery is denied on two grounds, firstly, that the court of law had acquired the prior jurisdiction, and that no reason was stated in the bill which would justify a displace-ment of that jurisdiction; secondly, because it would be necessary, on the trial of the first-mentioned case, to introduce expert evidence as to the kind of paper that should have been used in the execution of the work. Defendant denies that the ground of multiplic-ity of actions claimed in the bill would operate as a distinguishing feature, since it insists the two actions

were not for the same matter, but for different matters. We think it clearly appears from the face of the bill that the two suits at law were based on matters separate and distinct, notwithstanding the allegation that the two items had been entered on defendant's books under the heading of its general account against complainant. That was a mere matter of bookkeeping, and did not preclude the defendant from separating, for purposes of suit, matters that were in themselves distinct. So the bill itself, when properly construed, makes clear the fact that the complainant had not been subjected to a multiplicity of suits. As to the allegation concerning the necessity of employing expert testimony, of course the court of law was as competent to hear and act on evidence of that character as the court of chancery. So the demurrer and the arguments made to sustain it left unimpaired the merits of the defense asserted in the bill, viz., as to both demands generally, that the complainant did not owe these demands, and specifically as to the $262.08, that the goods furnished did not come up to the sample under which the contract was secured. As to the $119.21, while the statement of merits was exceedingly meager, if the bill can be construed as stating any merits at all, yet the demurrer did not challenge the general allegation that the complainant did not owe this sum of money; in fact, did not challenge this separate item at all. That is to say, it was directed to the whole bill, and not to any separate part of it; therefore it cannot be permitted to invalidate any such special, separ-

able part. A demurrer directed to the whole bill, and bad in respect thereof, cannot be held good as to a special separable part thereof, which is not distinctly challenged by it—save in a peculiar class of cases to which the present controversy does not belong. So it is the merits are not challenged by the demurrer. That pleading reaches only the jurisdiction of the chancery court over the subject-matter.

It is manifest that, as complainant alleges it does not owe these demands, and it has had no hearing upon its issue tendered to that effect, it would be most unjust to hold it bound by the confession of judgment exacted by the chancellor; nor can this be done. The chancellor rightly reserved control over these judgments. Now, since the bill must be dismissed, not on the merits, but on a technical question that does not go to the merits, these judgments confessed under the circumstances shown must be set aside, and the injunction against their enforcement must be made perpetual, and both parties must be remitted to their original rights at law.

It should be noted that the court's power to make disposition of these confessed judgments does not depend on the issues made in a bill, though the filing of the bill is the occasion of the exercise of that power. The power exists independent of any particular bill, and arises out of the duty of the court to protect the rights of litigants against dangers that may come from its own action. This protection, when the court grants its order, for an injunction, is extended to the defend-

Reynolds Corp. v. Knoxville Lithographing Co.

ant by a requirement that the complainant shall confess judgment. It is extended to the complainant by the court's retention of control over the confessed judgments, and by the exercise of that control when the bill is dismissed on any ground not affecting the merits.

It results that the decree of the court of civil appeals and of the chancellor must be reversed, and a decree entered here in accordance with the foregoing opinion.

The defendant will pay all of the costs of the cause, both of this court and of the chancery court.