ROBINSON et al. v. HARRIS et al.—260 S. W. (2d) 404.

Western Section. July 16, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

106

W. H. Fisher, of Memphis, for appellees Robinson and others.

T. B. Passmore, of Memphis, for appellants Martha Harris and others.

ANDERSON, P. J.  This is an ejectment suit involving the title to a tract of land of about 5.48 acres on Airways Boulevard, near the City of Memphis.  The defense is adverse possession for the statutory period under a registered assurance of title.  The complainants deny that the defendants' possession was adverse, and, moreover, contend that in another suit the defendant had caused the complainants' predecessors in title to be enjoined from asserting their right to the land, and that when the time during which said injunction was in force and effect is eliminated, the present suit was seasonably

brought. The Chancellor found for the complainants, and defendants appealed.

The tract in question lies just north of and adjoining a one-acre tract known as Martha Harris' home place, title to which is not in question. Just south of the one-acre tract is another one, owned by Martha Harris and her son, Ashley Harris. This one-acre tract is also not in question but is incidentally referred to in the record. The common source of title to the tract with which we are concerned is one Handy Sims. On June 26, 1926, he executed a trust deed on it and also an adjoining tract containing 32.88 acres. While it is not at all clear, it seems that the latter tract included the one-acre tract which it is conceded belongs to Martha Harris and her son, Ashley Harris, and which adjoins Martha Harris' home place on the south. This trust deed was duly recorded. Following the foreclosure sale, the trustee named in the trust deed, on June 29, 1929, executed his trustee's deed, conveying the tract in controversy, and also the 32.88-acre tract to the purchasers S. W. Moore and J. R. Buchinini. On February 12, 1931, Moore conveyed his interest in both tracts to Buchinini, who, on September 11, 1951, conveyed the 5.48-acre tract in controversy to the present complainants. All of the foregoing conveyances were registered in the Register's office. The present bill was filed on November 23, 1951.

On November 21, 1925, Martha Harris bought the tract of land in question from Handy Sims, apparently under a contract whereby she was to pay a cash consideration and $68.33⅓ annually for three years before receiving a deed. These payments were made, the last having been made in December, 1928.

On December 4, 1928, some two years after he had executed the above mentioned trust deed on the property,

Handy Sims executed a deed purporting to convey to Martha Harris, the defendant, a fee-simple interest in the property in question. This conveyance described the property as a 3½-acre tract, but it is the same property as the 5.48-acre tract covered by the trust deed.

Upon the execution of the above described contract of purchase and sale, Martha Harris took possession of the tract in question and has been in possession continuously since that time, claiming the fee under her registered assurance of title.

On March 2, 1930, the present defendant, Martha Harris, and her son, Ashley Harris, filed a bill in the Chancery Court of Shelby County against J. R. Buchinini and S. W. Moore, the same being cause No. 37157 R. D. After setting out the acquisition of the one-acre tract belonging to them and also the acquisition of the tract here in controversy and charging that Martha Harris took possession of this land on November 21, 1925, and had been in adverse possession of it under a registered assurance of title since that time, the bill contained the following averments:

"Said S. W. Moore is suing Martha Harris for certain alleged rentals in the Justice of the Peace Court of R. E. Harrison, a magistrate of Shelby County, Tennessee, said suit being for trial on the 25th day of April 1930; J. R. Buchignani (sic) desire to dispossess her also.

"Complainant Martha Harris owes no rentals to said Moore and is not indebted to Moore in any sum, nor does she owe Buchignani.

"Complainant would show that said Moore's litigation is an improper annoyance to them and if it is intended to cover any claim for alleged rentals on any lands belonging to complainants, it is a cloud upon

their title. Complainants allege that the claim of Buchignani and Moore here detailed are a cloud upon their title.

"Complainants are advised that Martha Harris is entitled to a writ of injunction against said defendants, restraining and prohibiting them from proceeding any further with said Justice of the Peace suit.

"Complainants realize that as a condition precedent to enjoining said suit referred to that this Honorable Court may require a confessed judgment to be entered before the Justice of the Peace and which will be stayed until the completion of this suit and stayed permanently if the complainants sustain their cause."

The pertinent prayers are in the following language:

"May the Court on the hearing enter its decree against defendants J. R. Buchignani and S. W. Moore forever enjoining and restraining them and each of them from molesting complainants in reference to their aforesaid land. May the Court remove said claims of Buchignani and Moore as a cloud from their title.

"May this Honorable Court enjoin the further prosecution of the Justice of the Peace case referred to and may it be done upon such terms as is usual in such matters and may said injunction be made permanent at the hearing."

On April 30, 1930, the Chancellor granted a fiat in the following language:

"To the Clerk & Master:

"Issue a writ of injunction as prayed for in the bill upon complainants confessing judgment in the case of S. W. Moore against Martha Harris pending in

the Court of R. E. Harrison, Justice of the Peace, Shelby County, Tennessee".

The injunction was duly issued and served on May 30, 1930. It enjoined the defendants Moore and Buchinini from "molesting complainants in reference to their land (which is fully described in the bill, a copy of which accompanies this writ), and also from further prosecuting the described case pending before the Justice of the Peace".

Moore and Buchinini having made no defense to the suit, the complainants took a pro confesso on August 15, 1930, but the case seems never to have been brought to trial on the merits. While this suit was still pending, Martha Harris alone, on May 3, 1946, filed another bill in the Chancery Court of Shelby County, against J. R. Buchinini. This suit involved only the tract here in controversy. The son, Ashley Harris, was not a party.

After describing the property, the manner in which she had acquired it, and charging that for 17½ years she had been in adverse possession, claiming the fee under a registered assurance of title, this bill alleged that the defendant was about to "sell said property and dispossess her of the same", and that his claim based on the trustee's deed above described, was a cloud on her title. She prayed for an injunction, restraining the defendant from undertaking to sell and dispose of the property "or from dispossessing or attempting to dispossess complainant", and asked that the aforesaid cloud on her title be removed. An injunction was duly issued and served. The defendant Buchinini filed an answer on May 16, 1946, which does not appear in the record. On March 16, 1948, the following order was entered:

"This cause having been heretofore heard and the Court having expressed the opinion that the cause

should be remanded for a hearing de novo and the complainant having elected theretofore, by leave of the Court granted, to dismiss the cause without prejudice: it is ordered, adjudged and decreed that this cause be and hereby is dismissed without prejudice at the cost of the complainant, for which let execution issue".

The foregoing cause was designated No. 49179 R.D. Thereafter, on January 19, 1949, the defendants, Moore and Buchinini, in cause No. 37157 R.D., moved to set aside the decree pro confesso which had been taken against them in that case or, in the alternative, to dismiss the bill for laches and failure to prosecute. The order disposing of this motion recites:

"Counsel for Martha Harris represented to the Court that she disavowed the pending suit as her act on the grounds that she did not authorize or participate in the same and had no knowledge of its existence until this was brought to her attention in another cause recently heard in this Court involving the same parties and property".

The order then continued:

"The Court can express no opinion on the status of this complainant as a bona fide litigant in the absence of proof thereon which the Court does not now have before it. However, upon the record of the cause which is before the Court, the Court is of the opinion that it should be dismissed for failure of the complainants to prosecute the cause".

It was accordingly so ordered, and the above described injunction issued in that case was dissolved. The Chancellor declined to incorporate in this order that the suit was dismissed for the further reason that the defendants had failed to appear and defend the cause.

The complainant excepted to this action but prayed no appeal from the order.

It seems that in R.D. No. 37157, complainants, Martha Harris and her son, were represented by one solicitor, and in R.D. No. 49179, Martha Harris, the only complainant, was represented by a different solicitor, and in moving to dismiss the bill in the latter cause without prejudice she was represented by still another solicitor who is also representing her in the present case.

By way of explanation of the dismissal in cause No. 49179, the answer in the present case avers that the defendant, Martha Harris', present solicitor "sought to gain said relief under said bill but reached the conclusion that the relief sought in said bill was available to the said Martha Harris only as a defendant on pleas of adverse possession and ownership of her color of title * * * and that upon advice of her said later solicitor (her present one) said action was dismissed without prejudice".

▉ Where it is established, seven years adverse possession under a registered assurance of title purporting to convey the fee, vests a good and indefeasible title in fee to the land described in the assurance of title no less than if the true owner of the fee had conveyed it by deed. Code Section 8582. Such possession nullifies or extinguishes the title of the real owner and transfers it to the adverse possessor. Creech v. Jones, 37 Tenn. 631; Cooper v. Great Falls Cotton Mills Co., 94 Tenn. 588, 30 S. W. 353; Kittel v. Steger, 121 Tenn. 400, 117 S. W. 500.

▉▉ A title thus acquired will support an action in ejectment or any other affirmative action. Authorities supra; Stewart's Lessee v. Harris, 32 Tenn. 656; Clay v. Sloan, 104 Tenn. 401, 58 S. W. 229; Demarcus v. Campbell, 17 Tenn. App. 56, 65 S. W. (2d) 876. This is subject

to the qualification that it must appear that the land in question was granted by the State of Tennessee or the State of North Carolina. See Dawson and Campbell v. Holt, 80 Tenn. 27. This, for the reason that until there is a valid grant, the title is in the state and the statute does not run against the sovereign. Northcut v. Church, 135 Tenn. 541, 188 S. W. 220; Roysdon v. Terry, 4 Tenn. App. 638, 650.

However, the complainant in case No. 49179 R.D. could not have gotten along for the same reason that she cannot get along with her plea of adverse possession in the present case. This is because the defendants in that case, the present complainants' predecessors in title, were for a period of 19 years, under an injunction not to ''molest'' her ''in reference'' to the land. The term ''molest'' as used in the injunction, considered in the light of the averments of the bill and the relief sought, was broad enough to cover the institution of any action involving the title and right to possession of the land. Hence, as the solicitor for the present complainants rather quaintly puts it, ''she (the present defendant) rested in the shade of that injunction for nineteen years''. In computing the statutory period of seven years, the time during which that injunction was in force cannot be counted. Code Section 8573.

With that time eliminated, the present bill was filed within the statutory period.

In view of what is hereinafter said, one other contention of the complainants must be noticed. This is that the confession of judgment in the suit before the Justice of the Peace fixed Martha Harris' status as a tenant, and hence she cannot be said to have been claiming adversely. Only the entry in the Justice of the Peace's docket was offered in evidence. It shows that a judgment was given in favor

of the plaintiff, S. W. Moore, against Martha Harris for $100. At that time the legal title to the land appears to have been in both Moore and Buchinini.

The entry on the docket of the Justice of the Peace does not reflect the nature of the cause of action in that case, but considered in the light of the bill filed by Martha Harris in cause No. 37157 R.D., it must be taken as true that that was an action to recover rent for the tract of land in controversy.

■ In the present case it seems to be the contention of the defendant that she did not know anything about the filing of the bill in R.D. No. 37157 and did not authorize anyone to make her a party thereto, and hence she is not bound by the institution of that suit. Apparently her theory is that that action was instituted by her son, Ashley Harris, without her knowledge or consent. This contention cannot be sustained. It is true that Martha Harris is obviously an ignorant and wholly illiterate old Negress. She does not seem to know her age, but manifestly she is an ancient. Her testimony is so vague and uncertain that it is almost entirely lacking in probative value. In no view can it be regarded as sufficient from that standpoint to establish the fact claimed. But apart from this, the record in that case affirmatively reflects that she was a party complainant in the suit. Where this is true, the record cannot be successfully impeached upon the uncorroborated testimony of the one so shown to have been a party to the litigation. And this would be true even in a direct attack upon the judgment. Cf. Harris v. McClanahan, 79 Tenn. 181, 184; and Jones v. Williamson, 45 Tenn. 371; see also, 5 Am. Jur. 307, 308.

■ But we cannot accept the view that the judgment in the case before the Justice of the Peace irrevocably established Martha Harris' status as a tenant. That

judgment does not show whether it was a confessed judgment, or not. But in view of the averments of the bill enjoining the prosecution of that action and particularly of the fiat granted by the Chancellor, it must be taken to have been a judgment which the Chancellor required to be confessed as a condition precedent to directing the issuance of the injunction prayed for, and taking jurisdiction of the controversy. Thus it was not a voluntary confession but a forced one, conditioned upon the fact that the Chancery Court would assume jurisdiction of the entire controversy, the confessed judgment remaining under its control.

This practice exists for the purpose of enabling the Chancery Court to protect its jurisdiction and preventing a multiplicity of suits. Control over the confessed judgment is retained in order that no injustice may be done to either party on the final decision of the injunction suit. The power to deal with the judgment to this end ''exists independent of any particular bill, and arises out of the duty of the court to protect the rights of litigants against dangers that may come from its own action.'' Reynolds Corp. v. Knoxville Lithographing Co., 138 Tenn. 287, 197 S. W. 897, 900.

It is true that when, on March 16, 1948, the Chancellor dismissed the bill in R.D. 37157, he ordered that the injunction against the prosecution of the action pending before the Justice of the Peace be dissolved without undertaking to set aside the judgment which he had required to be confessed in that case. But we think this was necessarily implied, for, if it was intended that the judgment should be allowed to stand, no further prosecution was necessary. The period of prosecution of the suit was over and the time for enforcement had arrived. The record

does not reflect whether there was any attempt to enforce that judgment.

In any event, there was no trial of the injunction suit on the merits, and since it was the duty of the Court, independent of any action by the parties, to protect the rights of the litigant from any danger that might arise from its action in forcing the confession of judgment, we would not be content under the facts of this case to allow the failure of the Court to deal with that judgment when he ordered the dismissal of the bill, to prejudice the rights of the defendant in the present suit, who was the complainant in that one. The primary object of the bill in that case was to establish the fact that the complainant therein was not a tenant but the owner of the land. She was required by the Chancellor to confess judgment in the other suit, not for the purpose of having her to admit the contrary, but only to enable the Chancery Court to determine the truth about the matter. This the Chancery Court never did because as said, there was no trial on the merits. As pointed out, the bill was dismissed solely for laches and a failure to prosecute. It may be observed in this connection that although the Chancellor declined to make it a ground of his action, it affirmatively appears that the defendants had failed to make any defense thereto for the same length of time that the complainants had failed to prosecute. On the contrary, they had suffered a pro confesso to be taken against them. ·

In these circumstances it would be a grave injustice to hold that the judgment in the other case in which the complainant had been forced to confess in order to gain entrance to the Chancery Court, was an irrevocable admission of the very fact, the denial of which was made the basis of her suit in equity.

So, upon this phase of the case we hold that the judgment in the suit before the Justice of the Peace did not operate to deprive the defendant of the right to rely upon her plea of adverse possession, but we further hold, that, for the reasons above stated, this plea is not a good defense to the present suit.

However, for a different reason, the present complainants cannot prevail. The deed by which they undertook to acquire title from Buchinini was champertous and void. On September 11, 1951, when that deed was executed, the defendant, Martha Harris, was and had been in possession of the tract since November 21, 1925. She had built a fence around it, enclosing it with her home place which adjoined it on the south. She had cleared and cultivated it. There can be no question about the adverse nature of her possession and that she was claiming the fee, and this under a registered assurance of title purporting to convey the fee, at least after she obtained her deed from Handy Sims on December 4, 1928. These facts are shown by a clear preponderance of the credible evidence. It may be added that the evidence unmistakably points to the fact that the complainants took the conveyance from Buchinini with full knowledge of Martha's possession, its nature and extent. In fact, Arthur Robinson, the only one of them who testified, said that the complainants were reared in the neighborhood, that before undertaking to buy the property he employed a lawyer to advise him about the matter, and the lawyer told him that Martha Harris was claiming the property as her own.

In this situation the deed from Buchinini to the complainants was champertous. That the former had or may have had a perfect title to the interest he sought to convey and that his deed was executed in good faith for a valuable consideration and not for the purpose of enabling the

grantees to litigate the title, does not save the conveyance from the vitiating effect of the champerty statutes. Green v. Cumberland Coal & Coke Co., 110 Tenn. 35, 38, 72 S. W. 459; Kincaid v. Meadows, 40 Tenn. 188; Gass v. Malony, 20 Tenn. 452; Bleidorn v. Pilot Mt. C. & M. Co., 89 Tenn. 166, 204, 15 S. W. 737; Kitchen Miller & Co. v. Kern, 170 Tenn. 10, 15, 91 S. W. (2d) 291.

To render a transaction champertous, no particular length of adverse possession is necessary. No more is required than that the land was being adversely held at the time of the conveyance. Jones v. Mosley, 29 Tenn. App. 559, 568, 198 S. W. (2d) 652, and cases cited.

It is true that the defense of champerty was not pleaded or raised in the lower court, nor is it raised by counsel in this court. But such action was not necessary. The matter being one of public policy, the objection can be made at any time; and where the facts show that a conveyance is champertous, it is the duty of the appellate court to raise the question of its own motion. Heaton v. Dennis, 103 Tenn. 155, 52 S. W. 175.

It follows that the deed from Buchinini to the complainants conferred no title upon them whatsoever. Therefore they cannot maintain this suit in ejectment. Harris v. Mason, 120 Tenn. 668, 115 S. W. 1146, 25 L. R. A., N. S., 1011; Cunningham v. Prevow, 28 Tenn. App. 643, 192 S. W. (2d) 338. The result is the decree is reversed and the suit dismissed at the cost of the complainants.