IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 14, 2010 Session

CHARLES E. FOUST, JR. v. LARRY E. METCALF ET AL.

Appeal from the Chancery Court for Montgomery County
No. MC-CH-CV-RE-07-27     Laurence M. McMillan, Jr.

No. M2009-01449-COA-R3-CV - Filed November 8, 2010

Plaintiff filed this action to quiet title to a strip of land along a former railroad line. Defendant, an adjacent landowner, asserts that Plaintiff has no interest in the disputed property because the deed that purportedly conveyed the property to Plaintiff was champertous and void due to the fact Defendant was adversely possessing the property under color of title at the time of the deed. The trial court ruled in favor of Plaintiff, finding that Defendant failed to establish that Plaintiff's deed was champertous or that Defendant had acquired title by seven years of adverse possession under color of title for thirty years. We have determined the trial court applied an erroneous legal standard by holding that Defendant had to prove seven years of adverse possession to establish that Plaintiff's deed was champertous. Instead, Defendant need only prove that he was in adverse possession at the time of the deed to Plaintiff. Defendant established he was in adverse possession under color of title of the disputed property at the time of Plaintiff's deed; accordingly, the deed is champertous. Champertous deeds are void; therefore, Plaintiff never acquired a legal interest in the disputed property. We reverse the judgment of the trial court quieting title in favor of Plaintiff. As for Defendant's prayer that he be declared the owner of the disputed property, we have determined that an indispensable party is missing, the grantor of the deed to Plaintiff; therefore, we make no ruling concerning Defendant's claim that he owns the property by adverse possession of at least seven continuous years under color of title pursuant to Tenn. Code Ann. § 28-2-105.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Stanley M. Ross and R. Mitchell Ross, Clarksville, Tennessee, for the appellant, Larry E. Metcalf.

Steven T. Atkins, Clarksville, Tennessee, for the appellant, James Jay Harris.

Mark A. Rassas and Julia P. North, Clarksville, Tennessee, for the appellee, Charles E. Foust, Jr.

## OPINION

Charles Foust ("Plaintiff") and Larry Metcalf ("Defendant") each claim ownership to a narrow but substantial strip of land (referred to by the parties as the "Interlock") along the parties' common boundary in Clarksville, Tennessee. The Interlock is approximately 25 feet long and 782 feet wide, and it was originally the northernmost strip of two plots, owned by William and M.J. Flynn, and W.J. Ely, respectively.

In 1890, Louisville and Nashville Railroad Company ("L&N") purchased both plots and placed railroad tracks 25 feet from the northern boundary of the property.

L&N and its successor, CSX Transportation, Inc., owned the property, including the Interlock, for 97 years, from 1890 to 1987. In 1987, CSX sold the property to R.J. Corman Railroad Group, L.L.C. and R.J. Corman Railroad Company/Memphis Line (collectively "Corman").

Corman owned the property for the next 19 years. In September 2006, Corman sold the property to Plaintiff in two separate transactions. The first transaction conveyed the portion of the property south of the Interlock. The second transaction purportedly conveyed the Interlock and a second, triangular parcel, located northwest of the Interlock. Plaintiff's title to the land conveyed in the first transaction and to the triangular parcel is not at issue; only the Interlock is disputed.

Defendant acquired his interest in the Interlock in 1998 by a cash warranty deed from Betty Jo and Bobby Wall. The legal description of the property conveyed in that transaction included the Interlock. In fact, the legal description of the property in Defendant's chain of title includes the Interlock as early as 1960. However, it is undisputed that prior to 1960, the Interlock was not within the legal description of the property in Defendant's chain of title. It is also undisputed that the inclusion of the Interlock within the legal description from 1960 forward was the result of a surveyor's error in the 1960 deed.

Prior to the 1960 deed, the Southern boundary of the property was described as "a line *25 feet north of the center line* of the L&N track." (emphasis added). From 1960 forward, the southern boundary is described as "a point *in the center line* of said L&N railroad." (emphasis added). The revised legal description was the result of a surveying error by King

-2-

Surveying Company, which was discovered prior to the recording of the 1960 deed. This is evident from the fact that King Surveying attached a note to the 1960 deed stating, "There is to be excluded from this survey a strip of land lying on the north side of the L&N RR Tracks." The surveyor's note was recorded along with the 1960 deed; however, that was the last time the note appeared in the chain of title to this property. The erroneous legal description that incorporated the Interlock appeared in the next conveyance of the property, which was in 1969, and in all subsequent deeds; however, the surveyor's note did not. As a result, the legal description in Defendant's chain of title has erroneously included the Interlock since 1960.

In 2004, two years prior to Plaintiff's purchase of the property from Corman, Defendant began subdividing the property he had acquired from the Walls, including the Interlock. The Interlock ran across the southern boundary of two of the newly subdivided lots. Plaintiff even discussed the possibility of buying the two lots that contained the Interlock from Defendant; however, believing Defendant did not own the Interlock, Plaintiff also contacted Corman about purchasing some of Corman's property. During his negotiations with Corman, Plaintiff had the property surveyed twice. After the first survey, Plaintiff purchased Corman's land south of the Interlock by quitclaim deed. The second survey revealed that the Interlock was only included in the Defendant's chain of title due to the 1960 surveying error, and that Corman owned the Interlock. Based on this information, Plaintiff proceeded with the second transaction with Corman, purchasing the Interlock, as well as the additional triangular parcel, by quitclaim deed on September 15, 2006.

Eleven months later, on August 3, 2007, Plaintiff commenced this action to quiet title to the Interlock.[1] Defendant answered, arguing that Plaintiff was not the rightful owner of the Interlock for several reasons. First, he asserted that the September 15, 2006 deed from Corman to Plaintiff was void as champertous because Defendant was adversely possessing the property under color of title at the time of the conveyance to Plaintiff. Second, Defendant asserted that he had affirmatively acquired title to the Interlock pursuant to Tenn. Code Ann. § 28-2-105 by having adversely possessed the Interlock for seven years under color of title by deed which had been registered for more than thirty years. Defendant also filed a counterclaim, requesting that he be declared the legal owner of the property and alleging that Plaintiff had slandered Defendant's title by purchasing the Interlock while aware the title to the Interlock was in dispute.

---

[1]Plaintiff originally filed the complaint against Defendant, Reynolds Homebuilders, LLC, Stephen Smith, Ben Braxton Construction, and James Jay Harris; each of whom had purchased one of Defendant's subdivided plots. Plaintiff resolved his claims by agreement with Stephen Smith, Ben Braxton Construction, and James Jay Harris. Reynolds Homebuilders, L.L.C. did not submit a Notice of Appeal following the trial court's decision; therefore, Mr. Metcalf is the only remaining defendant.

A bench trial was held on January 28, 2009 and March 23, 2009. Plaintiff presented evidence to establish a valid chain of title that includes the Interlock from the 1890 Flynn and Ely deeds to the 2006 transaction between Corman and Plaintiff.

In his case-in-chief, Defendant presented evidence to establish that he holds the property under color of title that dates back to 1960. Defendant also presented evidence to establish that since 1998, he has stored construction equipment and allowed others to store similar equipment on the Interlock; he has used a portion of the Interlock as a parking lot for his building north of the Interlock; he graded and graveled portions of the property, including the Interlock. He also leased his entire property, including the Interlock, to the Clarksville Police Department in 1999, which placed temporary buildings on the Interlock. In 2004, Defendant put a fence around the gravel parking lot, fencing in portions of the Interlock. Defendant also presented proof that he, and his predecessors in title, have paid property taxes on the Interlock at least since 1990. It is upon these facts that Defendant asserts he was in adverse possession of the property under color of title since 1998.

To rebut Defendant's claim of adverse possession under color of title, Plaintiff presented a 1935 lease between L&N and Clarksville Stockyard Corporation, one of Defendant's predecessors in title. The 1935 lease stated that Clarksville Stockyard Corporation "will hold said land under the Railroad company and in subordination to its title; and will deliver up peaceable and quiet possession of said land or every portion thereof to the Railroad Company, . . . free from all claims and liability of every character whatever, at th[e] expiration of this lease." Plaintiff also presented proof that he and his predecessors in title paid property taxes on the Interlock.

The trial court ruled in favor of the Plaintiff, declaring Plaintiff the lawful owner of the Interlock. Specifically, the trial court found that Defendant failed to establish his claim of adverse possession under color of title for two reasons: first, because Defendant's acts of storing equipment and parking vehicles in the Interlock were not exclusive, adverse, continuous, open, or notorious for the entire prescriptive period, and second, because the 1935 Lease between L&N and Clarksville Stockyard Corporation applied to the Interlock property and prohibited adverse possession. Defendant filed a timely appeal.

**STANDARD OF REVIEW**

The appellate court conducts a *de novo* review of the trial court's decision in a boundary dispute with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v.*

*Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

A presumption of correctness does not attach to mixed questions of fact and law. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (citing *Murdock Acceptance Corp. v. Jones*, 362 S.W.2d 266, 268 (Tenn. Ct. App. 1961)). Although a presumption of correctness attaches to the trial court's findings of fact, we are not bound by the trial court's determination as to the legal effect of its factual findings, nor by its determination of a mixed question of law and fact. *Travelers Ins. Co. v. Evans*, 425 S.W.2d 611, 616 (Tenn. 1968); *Sullivan v. Green*, 331 S.W.2d 686, 692-93 (Tenn. 1959). Our standard of review of rulings on mixed questions of fact and law is *de novo* with a presumption of correctness extended only to the trial court's findings of fact. *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 305 (Tenn. 2005) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)).

## ANALYSIS

Defendant insists, *inter alia*, that Plaintiff has no right, title or interest in the disputed property because the 2006 deed from Corman to Plaintiff was void as champertous; thus, the trial court erred in not dismissing Plaintiff's petition to quiet title. Conversely, Plaintiff contends that Defendant did not prove that he adversely possessed the property for seven years.[2] We will first address the champerty issue.

---

[2]Plaintiff also asserted that Defendant was precluded from adversely possessing the property pursuant to the terms of the 1935 Lease between L&N and Clarksville Stockyard Corporation referenced in Defendant's deed. By its terms, the lease prohibited the Stockyard (Defendant's predecessor in title) from adversely possessing the property described in the lease from L&N (Plaintiff's predecessor in title). The trial court found that the Interlock was a part of the property included in the lease, and as a result, any acts of adverse possession by Defendant would have no effect on Plaintiff's title. We have determined that the lease agreement did not pertain to the Interlock, but to adjoining property as Plaintiff's expert witness, Surveyor Richard M. Davis, testified at trial. He stated the 1935 Lease applied to property that was "to the south" of the Interlock, and that it "wouldn't even involve [the interlock]." Accordingly, it is unnecessary to discuss the issue further in this opinion.

Champerty originated in English Common Law; it was designed to prevent the "trafficking of dormant titles." *See* 14 Am. Jur. 2d Champerty, Maintenance, Etc. § 12 (2010). Historically, a conveyance of real estate was considered champertous and void if the deed was conveyed when the real property was in the adverse possession of someone other than the grantor. *Id.*

Tennessee is one of the few jurisdictions in the United States that still recognizes champerty. *See id.*; *see also Levine v. March*, 266 S.W.3d 426, 437 n.13 (Tenn. Ct. App. 2007)*.* Tennessee's law of champerty is embodied in Tenn. Code Ann. § 66-4-201 *et seq*. Pursuant to Tenn. Code Ann. § 66-4-202, an agreement to sell land "shall be utterly void where the seller has not personally, or by the seller's agent or tenant, or the seller's ancestor, been in actual possession of the lands or tenements, or of the reversion or remainder, or taken the rents or profits for one (1) whole year next before the sale." The statute renders void any sale of real property when another is in adverse possession, even where the grantor holds the land in perfect title. *Green v. Cumberland Coal & Coke Co.*, 72 S.W. 459, 460 (Tenn. 1903). As this court explained in *Levine v. March*:

> Tennessee champerty statutes prohibit the sale of pretended interests in real property. Tenn. Code Ann. § 66-4-201 (2004). They also include the presumption that a sale of any interest in real property by a person without actual or constructive possession of the real property is champertous. Tenn. Code Ann. § 66-4-205 (2004). The purpose of these statutes is to protect persons in actual possession of an interest in real property from suits based on pretended or dormant claims, unless the suits are instituted in good faith by persons with bona fide claims of title. *Williams v. Hogan*, 19 Tenn. (Meigs) 187, 189 (1838).

266 S.W.3d at 437-38. The court elaborated in a footnote to this paragraph that, "[t]his statute can trace its lineage at least as far back as 32 Henry VII, ch. 9 (1540). . . . Tennessee is among the handful of states that continue to recognize this species of champerty." *Id.* at 438 n.13.

In the more recent opinion of *Mitchell v. Keck*, No. E2005-02381-COA-R3-CV, 2006 WL 1735142, at * 2 (Tenn. Ct. App. June 26, 2006), this court stated:

> Under [the champerty statutes], if one out of possession attempts to convey land which is adversely possessed by a third party, the conveyance is void. *Kincaid v. Meadows*, 40 Tenn. (3 Head) 188, 192, 1859 WL 3430, at *2

(1859); *Blair v. Gwosdof*, 329 S.W.2d 366, 368 (Tenn. Ct. App. 1959). Regardless of the validity of the conveyor's title to the land, such title becomes merely a pretended title, within the statute, when there is an attempt to convey it under such circumstances. *Kincaid*, 40 Tenn. (3 Head) at 192, 1859 WL 3430, at *2; *Blair*, 329 S.W.2d at 368. There is no required duration of adverse possession by the third party; all that is required is that the third party adversely possess the land at the time of the conveyance. *Kincaid*, at 192; *Blair*, at 368.

Adverse possession requires "an occupation of the property under a claim of right or title which is open, actual, continuous, exclusive, adverse and notorious." *Catlett v. Whaley*, 731 S.W.2d 544, 546 (Tenn. Ct. App. 1987).

*Mitchell*, 2006 WL 1735142, at *2.

Tenn. Code Ann. § 66-4-203 goes on to provide that any suit brought for the recovery of real property "shall be forthwith dismissed, with costs, by the court in which such suit may be pending," upon a finding by the court that the deed conveying the property to the plaintiff was champertous. *See Levine*, 266 S.W.3d at 438 (stating that "legal claims based on champertous deeds are subject to dismissal.").

ADVERSE POSSESSION IN CHAMPERTY

The trial court determined that Plaintiff was the lawful owner of the Interlock because Defendant failed to establish that he adversely possessed the Interlock for the entire prescriptive period of seven years. Defendant contends the trial court applied an erroneous legal standard by requiring that he prove he adversely possessed the Interlock for seven years. For the following reasons, we agree.

In champerty cases, the adverse possession "must be at least as high in nature and dignity as that possession which is held to be adverse under the statute of limitation." *Gernt v. Floyd*, 174 S.W. 267, 268 (Tenn. 1915). However, no particular length of adverse possession is necessary to render a deed void as champertous; it is sufficient that "the land was being adversely held at the time of the conveyance." *Robinson v. Harris*, 260 S.W.2d 404, 410 (Tenn. Ct. App. 1952) (citing *Jones v. Mosley*, 198 S.W.2d 652, 656 (Tenn. Ct. App. 1946) (citing *Green*, 72 S.W. at 460; *Allis v. Hunt*, 294 S.W. 509 (Tenn. 1927)). Thus, adverse possession in the champerty context is unlike a claim of adverse possession under Tenn. Code Ann. § 28-2-105, which requires seven years of possession under color of title

-7-

that has been registered for thirty years,[3] and unlike a claim of adverse possession under the common law, which requires twenty years of possession without color of title. *See Wilson v. Price*, 195 S.W.3d 661, 666-67 (Tenn. Ct. App. 2005) (citing *Cooke v. Smith*, 721 S.W.2d 251, 255-56 (Tenn. Ct. App. 1986)).[4] To render a deed void as champertous, the adverse party claiming under color of title need only be in possession of the disputed property "at the time of the conveyance." *Robinson*, 260 S.W.2d at 410. In this case, the disputed conveyance occurred on September 15, 2006.

### ACTUAL AND CONSTRUCTIVE POSSESSION

To establish adverse possession, "the possession must have been exclusive, actual, adverse, continuous, open and notorious." *Wilson*, 195 S.W.3d at 666 (citing *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983)). The possession must be open such that it provides notice to the world that the adverse possessor claims ownership of that property. *Id.* at 667 (citing *Cooke,* 721 S.W.2d at 254). Adverse possession does not require proof of "ill will or actual enmity, but merely means that the party claims to hold the possession as his, against the claims of any other." *Hightower*, 662 S.W.2d at 937.

Fencing in of property "is very decisive in determining possession and claim of ownership." *Cowan v. Hatcher*, 59 S.W. 689, 691 (Tenn. Ct. App. 1900); *see also Wilson*, 195 S.W.3d at 667 ("fencing a property demonstrates a clear claim of ownership"). "[W]here a portion of the land is in actual adverse possession, the party so holding has constructive possession of all the premises outside of his inclosure to the limits of his claim or assurance of title." *Green*, 72 S.W. at 460 (holding that fencing a portion of the disputed property constituted constructive possession of the entire disputed property).

The record in this case reveals that Defendant constructed a fence that enclosed a portion of the Interlock in 2004. Plaintiff admitted at trial that Defendant had fenced off a

---

[3]Tenn. Code Ann. § 28-2-105 provides:

> Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom such person claims having been in adverse possession of same for seven (7) years, where the real estate is held and claimed by such person or those through whom such person claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant, or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein.

[4]Defendant does not claim adverse possession under the common law.

portion of the Interlock. Defendant also testified that he graded and graveled the property enclosed by the fence, which he used to store construction equipment and vehicles.

The evidence in the record preponderates in favor of the finding that Defendant's fence enclosed a portion of the Interlock, that the fence was open and obvious, and that it gave notice to the world that Defendant claimed ownership of the property enclosed by the fence. *See Wilson*, 195 S.W.3d at 667 (citing *Cooke v. Smith*, 721 S.W.2d 251, 254 (Tenn. Ct. App. 1986)). Defendant's act of enclosing a portion of the Interlock in the fence constituted actual possession of that portion of the Interlock. *Cowan*, 59 S.W. at 691; *Wilson*, 195 S.W.3d at 667. Additionally, there is no dispute that Defendant held the entire Interlock under color of title. Our Supreme Court has defined "color of title" as "something in writing which at face value, professes to pass title but which does not do it, either for want of title in the person making it or from the defective mode of the conveyance that is used." *Cumulus Broadcasting, Inc., v. Shim*, 226 S.W.3d 366, 376 (Tenn. 2007). The metes and bounds description of the land conveyed to Defendant from the Walls in 1998 contains the Interlock. Thus, his claim to the Interlock is under color of title.

When a party holds some portion of land in actual adverse possession, and that possession is under color of title, "the party so holding has constructive possession of all the premises outside of his inclosure to the limits of his claim or assurance of title." *Green*, 72 S.W. at 460-61. Constructive possession, "connected as it always is closely with actual possession, and generally actual occupation of some part of the land, is clearly within the policy of the statute against champertous sales, and will render a conveyance of land so held null and void." *Id.* at 461. Consequently, Defendant's actual possession of the fenced-in portion of the Interlock coupled with the fact that he had color of title to the entire Interlock, means that Defendant was in constructive possession of the entire Interlock in 2006 when Corman purportedly conveyed the Interlock to Plaintiff. *Id.* at 460.

We have determined that Defendant was in constructive possession of the entire Interlock when Corman purportedly conveyed the property in 2006 to Plaintiff. Under Tennessee's champerty statutes, it follows that Plaintiff's 2006 deed to the Interlock was champertous and, thus, void. Accordingly, the 2006 deed conveyed no title to the Interlock on Plaintiff. *See* Tenn. Code Ann. § 66-4-202. Having determined that Plaintiff's claim is based on a champertous deed, Plaintiff's action to quiet title must be dismissed as Tenn. Code Ann. § 66-4-203 requires. *Levine*, 266 S.W.3d at 438.

We, therefore, reverse the trial court's decision to quiet title in favor of Plaintiff and remand with instructions that Plaintiff's Complaint to Quiet Title be dismissed.

DEFENDANT'S COUNTERCLAIM

In his Counterclaim, Defendant seeks a declaration that he acquired title to the Interlock under Tenn. Code Ann. § 28-2-105 by adversely possessing the property for seven years under color of title for thirty years.

The party claiming ownership by adverse possession under Tenn. Code Ann. § 28-2-105 "must sustain the proposition that the possession was in fact adverse to the true owner." *Bynum v. Hollowell*, 656 S.W.2d 400, 403 (Tenn. Ct. App. 1983). Under Tennessee law, the burden of establishing by clear and positive proof such adverse possession is on the adverse possessor. *See Whitworth v. Hutchison*, 731 S.W.2d 915, 917 (Tenn. Ct. App. 1986) (citing *Jones v. Coal Creek Mining and Mfg. Co.*, 180 S.W. 991 (Tenn.1915); *Davis v. Louisville & N.R. Co.*, 244 S.W. 483 (Tenn. 1922)). This rule applies to both the length of time and the character of possession. *Id.* Evidence of adverse possession is strictly construed and any presumption is in favor of the holder of the legal title. *Moore v. Brannan*, 304 S.W.2d 660, 667 (Tenn. Ct. App. 1959).

We have determined that Plaintiff is not the true owner of the Interlock; that decision, however, does not mean that Defendant is the true owner. *See Robinson*, 260 S.W.2d at 410 (stating that a finding of adverse possession for purposes of champerty does not require a finding that the part adversely possessed for the prescriptive period required under the adverse possession statutes). We have determined the 2006 deed from R. J. Corman to Plaintiff was void. Accordingly, Corman still possesses whatever interest it had in the property at that time. Further, if Corman is the true owner of the property, then Corman is an indispensable party to any action brought by Defendant pursuant to Tenn. Code Ann. § 28-2-105 to establish that Defendant owns the property by adverse possession. *See Wilson v. Price*, 195 S.W.3d 661, 670-71 (Tenn. Ct. App. 2005).

Because we cannot resolve Defendant's claim that he acquired title by adverse possession under color of title, we may not rule on Defendant's claim that Plaintiff slandered his title.

**IN CONCLUSION**

The 2006 deed from Corman to Plaintiff was champertous and void; therefore, the judgment of the trial court is reversed and on remand Plaintiff's Complaint to Quiet Title is to be dismissed. Costs of appeal are assessed against Plaintiff.

_____
FRANK G. CLEMENT, JR., JUDGE