# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 14, 2012 Session

## MILLEDGEVILLE UNITED METHODIST CHURCH, ET AL. v. JIMMY G. MELTON, ET AL.

### Direct Appeal from the Circuit Court for McNairy County
### No. 6456    J. Weber McCraw, Judge

### No. W2011-01272-COA-R3-CV - Filed September 14, 2012

This case involves a dispute over the ownership of a parcel of real property. Appellee church purchased the disputed property from the seller bank in 1974, but failed to record its deed. Through a clerical error, the seller bank sold the disputed property to Appellant real estate investor in 2008. Appellant promptly recorded his deed. After the investor demolished a portion of a wall constructed by the church on the disputed property, the church sued to quiet title and for damages. The trial court ruled that the deed to the investor was void as champertous because the church's possession of the property was open and obvious at the time of conveyance. Thus the trial court ruled that the church was the true owner of the property. Although we affirm the decision of the trial court, we rely on grounds other than those found by the trial court.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Jon A. York, Donald D. Glenn, and Melissa K. Van Pelt, Jackson, Tennessee, for the appellant, Jimmy G. Melton.

Terry Abernathy, Selmer, Tennessee, for the appellee, Milledgeville United Methodist Church.

## OPINION

### I. Background

Plaintiff/Appellant Milledgeville United Methodist Church ("the Church") and the

Bank of Adamsville (with its successor-in-interest, Defendant Community South Bank, "the Bank") owned adjacent property in Milledgeville, Tennessee. In order to expand its parking lot, the Church purchased a small tract of land ("the disputed property") from the Bank of Adamsville in 1974. The Bank of Adamsville conveyed the disputed property to the Church by warranty deed; however, the Church did not record the deed at the time of purchase.[1] Furthermore, the Church did not pay property taxes on the disputed property. Instead, it is undisputed that, due to a clerical error, the Bank continued to pay the property taxes on the disputed property from the time of the sale in 1974 until 2008.

Even before purchasing the disputed property in 1974, the Church used it for various recreational and parking purposes. After purchasing the disputed property, the Church made improvements to the area, including placing gravel on the area, and later, in 1994 and 2007, paving the area for use as a dedicated parking lot. In addition, in 2001, the Church constructed a large brick wall on the disputed property that served to separate the Church's property, including the disputed property, from the adjoining property owned by the Bank. The brick wall was constructed on the disputed property approximately 18 inches from the boundary line between the disputed property and the property owned by the Bank.

Around 2005, Defendant/Appellant Jimmy G. Melton, a local real estate investor with properties throughout the State of Tennessee, inquired as to whether the Bank was interested in selling the property, on which the bank building stood. Mr. Melton was familiar with the property because he owned the property adjoining the Bank on the opposite side from the Church for the previous fifteen years. Mr. Melton ultimately purchased the property owned by the Bank in April 2008 for $50,000.00. Through an oversight on the part of the Bank, the property conveyed to Mr. Melton by warranty deed mistakenly included the disputed property. Mr. Melton recorded his deed with the McNairy County Register of Deeds in October 2008.

Soon after Mr. Melton recorded his deed, on November 18, 2008, he sent a letter to the Church asking it to remove the brick wall on the disputed property. The Church did not comply. Accordingly, on the evening of December 6, 2008, Mr. Melton removed a portion of the brick wall on the disputed property; Mr. Melton alleged that removal of the portion of the wall was necessary in order to allow him to repair a septic tank buried on the disputed property that serviced a building on Mr. Melton's property. When Mr. Melton removed portions of the wall, the entire wall collapsed.

On December 12, 2008, the Church filed a complaint in the McNairy County Circuit

_____

[1] The deed was lost for some time and later found in the Church secretary's personal files prior to the trial in this case. Consequently, the deed was not recorded until June 22, 2009.

Court, seeking compensatory damages for destruction of property, along with punitive damages. The Church also asked the court to determine the location of the boundary line between its property and Mr. Melton's. Upon request, the trial court issued a restraining order, which enjoined Mr. Melton from entering the disputed property.

Mr. Melton filed a motion to dismiss, citing the Church's failure to pay the property taxes on the subject property, which he argued prevented the Church from bringing the quiet title action, and the Church's failure to record its deed until after litigation commenced. The trial court denied the motion to dismiss on October 9, 2009. On December 10, 2009, the Church amended its complaint to add the Bank as a defendant; however, the Church did not seek damages from the Bank. A trial was held on January 25, 2011. Several members of the Church testified about the Church's continued use of the property from 1974 until the time of the trial. Specifically, members testified that the Church had: (1) graveled the area; (2) paved the area two times; (3) painted parking lines; and (4) constructed a brick wall in the disputed area to separate the Church's property from the Bank's property (later purchased by Mr. Melton). In addition, several members of the Church's Board of Trustees testified that, since purchasing the property in 1974, there had never been a need to service the septic tank underneath the disputed property, and the Church had never prevented any workers from servicing the system through a valve on the disputed property. The Church representatives further testified that Mr. Melton neither sought, nor did they give, permission for him to remove a portion of the brick wall to repair the septic tank. Mr. Melton testified, however, that he had no knowledge that the disputed property had been previously purchased by the Church. Specifically, Mr. Melton testified that: (1) the Church's deed was not recorded prior to his purchase of the property; (2) other businesses used the property for a parking lot; (3) no one from the Bank informed Mr. Melton that the Church purchased the disputed property; and (4) a survey of the property given to Mr. Melton by a Bank representative prior to Mr. Melton's purchase showed that the Bank owned the disputed property. Notwithstanding his claim that he had no knowledge of the Church's interest in the property, Mr. Melton admitted that he was aware of the Church's use of the property as a parking lot. Indeed, Mr. Melton testified that he passed by the property "on a daily basis or at least once a month." Mr. Melton also testified that he was aware that there was a brick wall separating the disputed property from the Bank's property. Mr. Melton testified, however, that he did not learn that the Church constructed the brick wall until after his purchase of the property. According to Mr. Melton, he learned that the Church constructed the wall from Dannie Kennedy; however, Mr. Kennedy testified that the Church's purchase, possession, and improvements to the disputed property were common knowledge in the community prior to Mr. Melton's purchase of the bank property. Mr. Melton further testified that he never inquired with any Church members or representatives about the Church's interest in the disputed property.

On April 8, 2011, the trial court entered an order containing thorough and detailed

findings of fact and conclusions of law. The court ruled in favor of the Church and assessed damages against Mr. Melton in the amount of $4,300.00. The trial court found that the Church's possession of the property was open, visible, and actual, so as to put Mr. Melton on notice of its possession of the land, and that the deed from the Bank to Mr. Melton was void as champertous. Accordingly, the trial court ruled that the Church was the true owner of the disputed property.

Mr. Melton timely appealed. On December 9, 2011, this Court entered an order noting that the order appealed was not a final order as it did not adjudicate the Church's claim for punitive damages. Consequently, this Court directed Mr. Melton to obtain a final judgment in the trial court. On December 21, 2011, the trial court entered an order denying the Church's claim for punitive damages and the appellate record was supplemented to include this order. It now appears the order appealed is final and this Court has jurisdiction to consider this appeal. *See Bayberry Assoc. v. Jones*, 783 S.W.2d 553 (Tenn. 1990).

## II. Issues Presented

Mr. Melton raises the following issues:

1. Whether the Church's failure to pay property taxes on the subject property barred the action?
2. Whether the Church adversely possessed the subject property so as to render the deed to Mr. Melton champertous?
3. Whether this matter presents a situation in which the recording statutes are more properly invoked than the principle of champerty?

## III. Standard of Review

Because this case was tried to the trial judge without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)).

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington*, No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010).

## IV. Analysis

Mr. Melton first asserts that the Church's failure to pay the property taxes on the disputed property prevents it from bringing this action to quiet title. Mr. Melton relies on Tennessee Code Annotated Section 28-2-110, which states:

> (a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

It is undisputed that the Bank, rather than the Church, paid the property taxes on the disputed property for the twenty (20) years prior to this action. The Church argues, however, that this issue is an affirmative defense that was not raised by Mr. Melton in his answer. In addition, the Church argues that, according to the plain language of the above statute, a person having an interest in property will only be barred from asserting ownership if the person, "who and *those through whom such person claims* have failed to have the same assessed and to pay any state and county taxes." Tenn. Code Ann. § 28-2-110 (emphasis added). Because it is undisputed that the Bank, i.e., the entity through whom the Church claims the disputed property, has paid the taxes, the Church argues that Tennessee Code Annotated Section 28-2-110 does not bar the claim. We agree. The above statute clearly contemplates that the property taxes may either be paid by the present owner of the property or the present owner's predecessor in interest. *See In re Twinton Properties Partnership*, 44 B.R. 426, 431 (Bkrtcy. Tenn. 1984) (holding that the plaintiff could not bring suit to recover property where "[n]one of the persons through whom his chain of title was asserted paid any

property taxes on the property for the last 20 years, if at all"). Accordingly, Tennessee Code Annotated Section 28-2-110, whether properly pled or not, is not a bar to this action.

Mr. Melton's next issues allege error in the trial court's ruling that the Church is the proper owner of the disputed property, either through the doctrine of champerty or pursuant to the race notice statute. Mr. Melton asserts that he is entitled to the disputed property under either theory.

The trial court relied on the doctrine of champerty to find that the Church was entitled to the property, citing Tennessee Code Annotated Section 66-4-402:

> Any such agreement, bargain, sale, promise, covenant or grant shall be utterly void where the seller has not personally, or by the seller's agent or tenant, or the seller's ancestor, been in actual possession of the lands or tenements, or of the reversion or remainder, or taken the rents or profits for one (1) whole year next before the sale.

As we perceive it, the law of champerty operates as a shield to the party in possession, and requires that any suit against the party in possession that violates the law of champerty should be dismissed:

> Any suit at law or equity brought for the recovery of the lands or tenements bargained or contracted for, whether the agreement, sale, bargain, covenant, grant, or promise be executed or executory, shall be forthwith dismissed, with costs, by the court in which such suit may be pending, upon the facts being disclosed.

Tenn. Code Ann. § 66-4-402.

The doctrine of champerty was recently discussed by this Court in *Levine v. March*, 266 S.W.3d 426 (Tenn. Ct. App. 2007):

> Tennessee champerty statutes prohibit the sale of pretended interests in real property. Tenn. Code Ann. § 66-4-201 (2004). They also include the presumption that a sale of any interest in real property by a person without actual or constructive possession of the real property is champertous. Tenn. Code Ann. § 66-4-205 (2004). The purpose of these

-6-

statutes is to protect persons in actual possession of an interest in real property from suits based on pretended or dormant claims, unless the suits are instituted in good faith by persons with bona fide claims of title. *Williams v. Hogan*, 19 Tenn. (Meigs) 187, 189 ([Tenn.] 1838).

*Id.* at 437–38 (footnote omitted). The Tennessee Supreme Court defined "pretended title," in *Green v. Cumberland Coal & Coke Co.*, 72 S.W. 459 (Tenn. 1903), as "[a] sale of lands held under a perfect title, but in the adverse possession of another at the time." Pretended title was discussed in more detail in *Mitchell v. Keck*, No. E2005-02381-COA-R3-CV, 2006 WL 1735142 (Tenn. Ct. App. June 26, 2006):

> Under [the champerty statutes], if one out of possession attempts to convey land which is adversely possessed by a third party, the conveyance is void. *Kincaid v. Meadows*, 40 Tenn. (3 Head) 188, 192, 1859 WL 3430, at *2 (1859); *Blair v. Gwosdof*, 329 S.W.2d 366, 368 (Tenn. Ct. App.1959). Regardless of the validity of the conveyor's title to the land, such title becomes merely a pretended title, within the statute, when there is an attempt to convey it under such circumstances. *Kincaid*, 40 Tenn. (3 Head) at 192, 1859 WL 3430, at *2; *Blair*, 329 S.W.2d at 368. There is no required duration of adverse possession by the third party; all that is required is that the third party adversely possess the land at the time of the conveyance. *Kincaid*, at 192; *Blair*, at 368.

*Mitchell*, 2006 WL 173142, at *2. Thus, a conveyance by one out of possession of land, which is adversely possessed by another person or entity, is void. However, in order for the law of champerty to apply, the possession of the third party must be adverse. Accordingly, to determine whether this sale is void due to the doctrine of champerty, we must first determine whether the Church's interest in the disputed property is adverse. Adverse possession requires "an occupation of the property under a claim of right or title which is open, actual, continuous, exclusive, adverse and notorious." *Catlett v. Whaley*, 731 S.W.2d 544, 546 (Tenn. Ct. App. 1987). "The mere possession of land does not in and of itself show an adverse claim to the owner thereof, and no adverse claim arises from a use permissive in its inception until a distinct and positive assertion of a right adverse to the owner has been brought home to him." *Branstetter v. Poynter*, 222 S.W.2d 214, 217 (Tenn. Ct. App. 1949).

In this case, the evidence clearly shows that the Church legally purchased the property from the Bank in 1974. There is no claim that the Bank either did not own the property, or

was not at liberty to sell it to the Church in 1974. Thus, the Church was the rightful owner of the property, although it did not record its deed. This Court has clearly stated that "the rightful and legal owner of property cannot adversely possess against his own interest in the land." *Holley v. Haehl*, No. M1999-02105-COA-R3-CV, 2000 WL 1292291, at *3 (Tenn. Ct. App. Sept. 14, 2000); *see also* *Bingham v. Knipp*, Nos. 11281, 02A01-9803-CH-00083, 1999 WL 86985, at *2 (Tenn. Ct. App. Feb. 23, 1999). A party claiming ownership by adverse possession "must sustain the proposition that the possession was in fact adverse to the true owner." *Bynum v. Hollowell*, 656 S.W.2d 400, 403 (Tenn. Ct. App. 1983).

Without adverse possession, the law of champerty does not apply, as adverse possession is an essential element of the law of champerty. This requirement was recently discussed in the case of *Foust v. Metcalf, et al.*, 338 S.W.3d 457 (Tenn. Ct. App. 2010). In *Foust*, this Court applied the law of champerty to dismiss a suit by plaintiff, the subsequent purchaser of the disputed property, to quiet title to a narrow strip of land along the parties' common boundary. In 1998, the defendant purchased a parcel of property by a cash warranty deed from a third party. Because of a survey error, the purchased property mistakenly included the disputed area. The disputed property was included in the legal description of the defendant's purchased property as early as 1960; however, the third party sellers had no right to convey the disputed property because it was actually owned by a railroad company. After purchasing the property, the defendant began subdividing the property. In 2006, the railroad company sold the disputed property to the plaintiff. In 2007, the plaintiff sued to quiet title on the disputed property. The defendant counterclaimed that he was entitled to the property by adverse possession. The trial court ruled in favor of the plaintiff subsequent purchaser because the defendant failed to establish that he had adversely possessed the property for a period of seven years. This Court reversed, holding that the plaintiff purchaser's deed was void as champertous because the defendant had been adversely possessing the property "at the time of conveyance." *Id.* at 464 (citing *Robinson v. Harris*, 260 S.W.2d 404, 410 (Tenn. App. Ct. 1952)). The Court emphasized, however, that the possession by the defendant land owner was adverse to the true owner of the property, the railroad company. Concluding that the defendant landowner was in actual and constructive possession of the disputed land, the Court dismissed the plaintiff's action to quiet title as required by Tennessee Code Annotated Section 66-4-402. *Foust*, 338 S.W.3d at 465. However, the Court went on to conclude that its decision that the plaintiff's deed was void as champertous did not necessitate a finding that the defendant was the true owner of the property, stating:

> We have determined that [p]laintiff is not the true owner of the [disputed property]; that decision, however, does not mean that [d]efendant is the true owner. *See Robinson*, 260 S.W.2d at 410 (stating that a finding of adverse possession for purposes of champerty does not require a finding that the party

adversely possessed for the prescriptive period required under the adverse possession statutes). We have determined the 2006 deed from [the railroad company] to [p]laintiff was void. Accordingly, [the railroad company] still possesses whatever interest it had in the property at that time. Further, if [the railroad company] is the true owner of the property, then [the railroad company] is an indispensable party to any action brought by [d]efendant pursuant to Tenn. Code Ann. § 28-2-105 to establish that [d]efendant owns the property by adverse possession. *See Wilson* [*v. Price*], 195 S.W.3d [661,] 670–71.

*Foust*, 338 S.W.3d at 466.

*Foust* is distinguishable from the case-at-bar for two reasons. First, there is no question that, at the time of the sale in 1974, the Bank was the true owner of the disputed property and was entitled to convey the property to the Church. Thus, unlike the defendant's deed in *Foust*, which erroneously conveyed the property owned by the railroad company and was, therefore, defective, the Church's deed conveyed the property at issue and was not defective. Therefore, the Church's possession of the disputed land was not adverse to the true owner; indeed, prior to the subsequent sale to Mr. Melton, there was no question that the Church was the true owner of the property after it purchased it in 1974.

Second, the subsequent purchaser in this case is the defendant rather than the plaintiff. As previously discussed, Tennessee Code Annotated Section 66-4-402 operates as a shield to prevent an owner of property from conveying the property to a third party when another is adversely possessing the property at the time of the conveyance. In this case, however, the Church seeks to use Tennessee Code Annotated Section 66-4-402 as a sword to quiet title against Mr. Melton, the subsequent purchaser. However, as explained in *Foust*, under a proper application of the champerty statutes, the party who is in adverse possession of the property is not automatically entitled to the property upon a finding that a subsequent deed, from the true owner, is void as champertous. Instead, the party who is in actual possession of the property must bring a suit against the true owner, an indispensable party, to quiet title by proving that the elements of adverse possession have been met. Here, however, the evidence shows that the Bank sold the property to the Church in 1974 by warranty deed. Tennessee Code Annotated Section 66-26-101 provides that deeds, such as the one conveyed to the Church "shall have effect between the parties to the same, and their heirs and representatives, without registration." Accordingly, despite the Church's failure to record their deed, the conveyance was binding on the Bank and the Bank no longer owned the disputed property after the sale. Thus, unlike the railroad company in *Foust*, the Bank

retained no interest in the property that the Church is required to quiet. Therefore, the law of champerty is simply inapplicable to the facts presented in this case.

Mr. Melton next insists that this case should be decided pursuant to Tennessee's race notice statute. We agree. Race notice statutes, like the one enacted in Tennessee, are common throughout the United States:

> There are several states that have enacted some form of race notice recording statute. These states include California, Colorado, Georgia, Idaho, Indiana, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Nevada, New Hampshire, New Jersey, New York, Tennessee, Utah, Virginia, Washington, Wisconsin, and Wyoming. . . .
>
> *    *    *
>
> When determining priority in a race notice jurisdiction, the subsequent purchaser must establish that he or she was the first to record the deed for the conveyance. In addition, the subsequent purchaser must establish that he or she was a bona fide purchaser of the property.
>
> *    *    *
>
> The purchaser must establish that the property was purchased:
>
> (1) in good faith;
> (2) for valuable consideration;
> (3) without notice of the outstanding rights of others.
> All of these elements must be satisfied before a prior interest is recorded or the purchaser will not be considered a bona fide purchaser.

112 Am. Jur. Proof of Facts 3d 419, § 3, 7 ( 2010).

Tennessee's race notice statute "[i]s primarily intended to resolve the situation created by a [] landowner who knowingly or negligently conveys the same land more than once." *Watson v. Watson*, 658 S.W.2d 132, 134 (Tenn. App. 1983). That is precisely the situation presented in this case. Our race notice statute states:

Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

Tenn. Code Ann. § 66-26-105. Therefore, under Tennessee's race notice statute, a first-filed instrument has preference over a later-filed document, even one that was executed first. *Harris v. Buchignani*, 199 Tenn. 105, 113, 285 S.W.2d 108 (Tenn. 1955). This preference is not available, however, where the party claiming under the subsequent instrument had "full notice" of the prior unrecorded one. Tenn. Code Ann. § 66-26-105. It is undisputed that Mr. Melton recorded his deed before the Church recorded its deed. As such, Mr. Melton's interest in the disputed property will take priority so long as he did not have "full notice" of the Church's prior unrecorded deed.

Mr. Melton argues that he could not have notice of Church's interest in the property because the Church failed to record its deed and the Church's ownership was not reflected in the survey provided to him by the Bank. However, this Court has held that record notice is only one of many ways by which a subsequent purchaser may be put on notice of another's interest in land. As stated by this Court in *Associates Home Equity Services, Inc. v. Franklin Nat. Bank*, No.M2000-00516-COA-R3-CV, 2002 WL 459007 (Tenn. Ct. App. 2002) *per. app. denied* (Tenn. Oct. 21, 2002):

> Notice may be imparted in several ways. There may be actual notice, which is the equivalent of personal knowledge on the part of the purchaser, or there may be record notice (sometimes called 'constructive' notice), deriving from the recordation of the prior instrument or something making reference to i[t]. Finally, there is a form commonly referred to as inquiry notice, which exists when the purchaser is in possession of information or facts sufficient to cause a reasonable person to make further inquiry as to the existence and content of the unregistered document.

*Id.* at *2 n.4 (citing Toxey H. Sewell, *The Tennessee Recording System*, 50 Tenn. L.Rev. 1, 43–44 (1982)). Inquiry notice, the type of notice at issue in this case, is explained in detail in American Jurisprudence: Proof of Facts:

[I]nquiry notice is generally considered notice that is presumed because a person has knowledge of certain facts which should impart to him or her, or lead him or her to, knowledge of the ultimate fact. Some states utilize a reasonable person standard for this analysis. If a bona fide purchaser is on inquiry notice concerning an adverse claim and fails to investigate, the bona fide purchaser will not prevail in a quiet title action against a prior unrecorded interest. Actual possession of the property by a third party puts a subsequent purchaser on inquiry notice. In some cases, this may be only in those instances where the possession by the third party is actual, open, visible, and exclusive possession inconsistent with the owner's title. In addition, one cannot be a good-faith purchaser if a reasonable investigation of the property would have revealed the existence of a conflicting claim.

112 Am. Jur. Proof of Facts 3d 419, § 12 ( 2010).

The trial court, in its findings of fact, concluded that Mr. Melton had notice of the Church's actual possession of the property. The trial court made the following findings:

The Court finds that the [Mr.] Melton as well as [the] Bank had notice of the actual, visible, open and notorious use of the property by the []Church. The [C]hurch had been using the disputed area for its parking, had improved the area by paving the lot with asphalt and had painted lines on the pavement for parking purposes for the church. Further, the church had improved the area by constructing a brick fence which clearly delineated the area separate and apart from the bank property and become the common boundary line between its property and the property of the bank. The Court does not find [Mr.] Melton to be credible when he testified that he saw "no red flags" whatsoever on the property. [Mr.] Melton was aware of the brick wall and was aware that the area beyond the wall was used by the church for parking. The Court finds that a man astute in real estate matters as [Mr.] Melton asserts was placed on notice on the claim and use of the property by the Plaintiff Church. The failure of [Mr.] Melton to discuss this matter with the [] Church until after the recording of his deed indicates the calculated, intentional and mean-spirited nature of the [Mr.] Melton to

-12-

lay-in-wait before asserting his ownership by claim of title and destroying the wall which would then be visible to the church congregation the next morning.

While Mr. Melton takes issue with the trial court's finding that the Church's possession of the property was exclusive, as required to apply the law of champerty, Mr. Melton does not contest the trial court's finding that he had notice of the Church's "actual, visible, open and notorious use of the property." Even if Mr. Melton had contested these findings, we will affirm the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). The evidence in the record supports the trial court's finding that Mr. Melton was on notice that the Church held an interest in the disputed property. Several facts lead this Court to conclude that a reasonable person in Mr. Melton's situation would have made an inquiry with the Church as to its claim to the disputed property, including: (1) the Church's longstanding use of the property as a parking lot; (2) the Church's action in first graveling, and then paving, the property; and (3) the brick wall built by the Church to separate its property from the Bank's. In addition, Mr. Melton was a neighbor of the Church for fifteen years prior to this litigation and admitted that he passed by the Church on multiple occasions. Although Mr. Melton testified that he inquired with Bank representatives regarding the ownership of the property, he admitted that he never asked any Church representatives about the Church's use or legal interest in the property. From our review of the record, the trial court simply did not credit Mr. Melton's testimony that nothing about the Church's open and obvious use of the disputed property put Mr. Melton on notice that the Church had a legal interest in the property. As we previously stated, we will not overturn credibility determinations "absent clear and convincing evidence to the contrary." ***Heffington v. Heffington***, No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010). Indeed, nothing in the record leads this Court to overturn the trial court's credibility determination regarding Mr. Melton, nor does Mr. Melton contest this determination on appeal. Like the trial court, we simply cannot conclude that an experienced real estate investor such as Mr. Melton could own property adjacent to the Church for fifteen years and pass by it "almost on a daily basis" without noticing the Church's possession and improvements to the property. Instead, from our review of the record, Mr. Melton was fully aware of the Church's use of, and improvements to, the property, but chose to buy the property notwithstanding this knowledge. As such, Mr. Melton's knowledge of the Church's actual possession of the property put him on inquiry notice of the Church's legal claim to the disputed property. *See **Henderson v. Lawrence**,* 16 McCanless 247, 369 S.W.2d 553 (Tenn. 1963) (holding that actual possession alone is sufficient to put a subsequent purchaser on inquiry notice of another's rights in the disputed property); *see also* 112 Am. Jur. Proof of Facts 3d 419, § 12 ( 2010) ("Actual possession of the property by a third party puts a subsequent purchaser on inquiry notice."). Because Mr. Melton was on inquiry notice that the Church held a legal claim to the subject property, we

conclude that he cannot rely on his first recorded deed to claim priority to this property. Under a proper application of Tennessee Code Annotated Section 66-26-105, the Church's deed to the property, though not first recorded, has priority.

While the trial court mistakenly applied the law of champerty to this case, this Court "may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 302 n.31 (Tenn. Ct. App. 2007). Thus, based on a proper application of the race notice statute to the facts of this case, we affirm the trial court's ruling that the Church is the true owner of the property.

## V. Conclusion

The judgment of the Circuit Court of McNairy County is affirmed and this cause is remanded for entry of judgment in favor of Appellee Milledgeville United Methodist Church. Costs of this appeal are taxed to Appellant Jimmy G. Melton, and his surety.

_____
J. STEVEN STAFFORD, JUDGE