IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2023 Session

**PRISCILLA SMITH v. SHARON BERRY, ET AL.**

**Appeal from the Chancery Court for Hawkins County**
**No. 2020-CH-181    Douglas T. Jenkins, Chancellor**

_____

**No. E2023-00281-COA-R3-CV**

_____

Priscilla Smith filed a complaint in the Chancery Court for Hawkins County ("the Trial Court") against multiple neighbors, including Michael and Sharon Berry. She sought access to her property by way of an undeveloped road called Hyder Lane. The Berrys' garage was on the undeveloped road. After trial, the Trial Court determined that Hyder Lane was a public road and ordered the garage to be removed and the road opened for Ms. Smith's use and access to her property. The Berrys appealed. Having concluded that certain indispensable parties were never joined to the action, we vacate the Trial Court's judgment and remand for the joinder of these indispensable parties.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Phillip L. Boyd, Rogersville, Tennessee, for the appellants, Michael Berry and Sharon Berry.

George Todd East, Kingsport, Tennessee, for the appellee, Priscilla Smith.

# OPINION

## Background

On July 17, 2020, Ms. Smith filed a complaint, pursuant to Tenn. Code Ann. § 54-14-101 *et seq.*, against her neighbors in the Trial Court. She stated that she was the owner of an 18.40-acre tract of land, which she alleged was enclosed by various tracts of property separately owned by the Berrys, Eric Todd Linkous, and Joshua and Micah Kegley. Based upon the filings and the testimony present in the record, it appears that these properties were part of the "J.E. Clemons Subdivision" and were the result of Mr. Clemons's subdivision of his property in the 1950s.[1] Ms. Smith alleged that she had requested permission from the Berrys to access her property by way of Hyder Lane, a purportedly public road that was platted to reach Ms. Smith's property. Hyder Lane, however, was never developed past the Berrys' property, and the Berrys' garage sits on Hyder Lane, blocking further development of the road and Ms. Smith's access to her property.

The Berrys refused Ms. Smith access and claimed title by adverse possession to the contested portion of Hyder Lane where their garage sits. Ms. Smith explained that she did not request access across Mr. Linkous's property or the Kegleys' property given that the "ingress and egress is neither adequate nor convenient and would occasion significant damage" to their properties. Ms. Smith claimed that she was "unable to fully enjoy the Property and requires an easement to go on the Property to prepare for the sale of Property and do any and all other things incidental to the ownership of the Property." Ms. Smith requested that the Trial Court grant her an easement or right-of-way via the contested portion of Hyder Lane.

Ms. Berry filed a motion to dismiss, alleging that Ms. Smith's complaint failed to state a claim upon which relief could be granted and that there was already a former suit pending.[2] She further claimed that her garage had been constructed in 1960, thereby rendering Ms. Smith's requested relief barred by the statute of limitations pursuant to Tenn. Code Ann. § 29-18-109. She further cited Tenn. Code Ann. §§ 28-2-102, -103, and -105, stating that she and her ex-husband, Mr. Berry, had adversely possessed the contested portion of Hyder Lane. She also cited Tenn. Code Ann. § 28-2-109, stating that Mr. Berry and she had paid taxes on the contested portion of property for more than twenty years and were accordingly the legal owners. Mr. Berry later filed his own separate motion to dismiss.

---

[1] Clemons is spelled as "Clemons" in documents in the technical record but as "Clemmons" in the transcript. In this Opinion, we spell the last name as it appears in the technical record.

[2] Although not entirely clear from the record, it appears that this former suit was consolidated with the present one based upon an "Order to Consolidate." Ms. Smith testified at trial that this conflict had been on-going since 2009.

On March 15, 2021, the Trial Court denied Mr. Berry's and Ms. Berry's motions to dismiss. Mr. Berry and Ms. Berry thereafter filed a joint answer and renewed their request for dismissal. They also claimed that Ms. Smith's property once fronted the "main road" but that Ms. Smith had sold a portion of her property that gave her access to this road. They posited that she could not now claim that her property was landlocked.

The Trial Court conducted a trial on May 23, 2022, and heard testimony from Ms. Smith; Lowell Bean, the Hawkins County Road Superintendent; David Pearson, the Hawkins County Property Assessor; Timothy E. Scott, an attorney and expert in title examinations; Margaret Louise Rimer, a former owner of the Berrys' property and garage; Gerald Ward, Ms. Rimer's brother; and Ms. Berry.

Ms. Smith testified that she had inherited her property from her father, Bob Gilreath, and that her property was located at the end of Hyder Lane. She further explained that she does not have access to her property if she cannot use Hyder Lane. She acknowledged, however, that if she still owned the parcels she previously sold, then her property would not be landlocked without access to a public road. According to Ms. Smith, an old plat from 1956 ("1956 Plat") demonstrated that Hyder Lane was platted to "go all the way to the end of the property." The 1956 Plat was admitted into evidence as an exhibit.

Ms. Smith grew up in the subdivision and recalled that Eddie Rimer, Ms. Rimer's husband, built "a little shed like thing to put his car under," which she described as four "sticks with a flat roof." This is the garage at issue. She agreed that the garage had been situated on Hyder Lane for over fifty years. She further explained that she or her husband went to the tax assessor's office to inquire about the garage on one occasion and that the tax assessor's office determined that the garage needed to be removed from the Berrys' "tax roll." Ms. Smith acknowledged that the tax assessor later reinstated the garage to the Berry's tax roll.

Mr. Bean testified that he has been the Hawkins County Road Superintendent for nearly sixteen years. He stated that he was familiar with Hyder Lane and that Hawkins County ("the County") has previously plowed snow off the road and patched potholes but that only one-tenth of the road is recognized as county property. He further explained that he would not pave the unfinished portion of the road if asked, given that he would need to get approval from the "road committee" and "county commission" and that those two boards would have to "accept it as a county road." He stated that Hyder Lane was not a "county right-of-way," although he acknowledged that the 1956 Plat shows the contested portion as being part of the county road and that, according to the 1956 Plat, it is supposed to "go all the way through," presumably beyond the one-tenth developed portion.

Speaking about the unfinished portion of Hyder Lane, Mr. Bean explained:

[I]f the rest of that was to become a county road, then all the property owners has to deed that to the County with the now subdivision specs. And then it would go before the road committee, the road committee would go up and look at section of road, and either recommend or recommend it not go before the full commission. Then if it went before the full commission and they accepted it as a county road, then I'm free to do whatever . . .

When asked how a road would be dedicated to the County if there was no planning commission at the time of its dedication, Mr. Bean stated that the property owners would "just make a deed to the County." However, Mr. Bean clarified that "we got a lot of roads in the county that don't have deeds."

Through Mr. Bean's testimony, Ms. Smith offered as evidence a 1959 Resolution from the Hawkins County Court ("1959 Resolution"), providing:

Be it resolved by the County Court of Hawkins County, Tennessee, that, as recommended by the County Superintendent of Highways, all Streets and Roads which have heretofore been laid out and dedicated to the public use, within duly platted subdivisions located in said County, shall be taken over by the County Superintendent of Highways and maintained as public roads and streets, as expeditiously as the Highway Superintendent is able to commence the working and maintenance of said roads and streets.

When asked whether he knew "of any acceptance of any dedications in the county other than what shows up in the County rolls and the County minutes," Mr. Bean answered "No."

Mr. Pearson testified that he was the Property Assessor for the County and had worked in that office since 1987. Mr. Pearson stated that taxes were no longer paid on the garage as of 2021 or 2022 and opined that this was because it does not sit on the Berrys' property and therefore should not have been charged to the Berrys. He explained that the garage had been removed from the property assessment in 2012 but had been put back on at the request of the Berrys.

When asked who requested that it be taken off the property assessment, Mr. Pearson explained:

[T]he reason it was taken off when we do our visual inspection cycle, we review every parcel in the county, one-fourth of the county, every year. The person that did that review noticed -- based upon looking at our new maps that we have, which have a photo overlayed over the maps, it clearly

- 4 -

indicated that building didn't sit on that parcel. So it actually sits in the middle of our right-of-way and it shouldn't have been charged to anybody, so it was taken off at that time.

Mr. Pearson clarified that the Berrys paid taxes on the garage itself, not the land, from 2011 until 2020 or 2021. He explained that he had decided that the garage should "come off the rolls" in 2020 or 2021 because it did not physically reside on the Berrys' parcel and did not have much value. He indicated that the garage was not a valuable building and that it was "grown over with a lot of bushes and stuff."

Next, Mr. Scott testified as an expert witness for Ms. Smith. He testified that he was an attorney with expertise in oil, gas, and coal, as well as real estate title examinations. The Berrys stipulated to his qualification as an expert witness. Mr. Scott reviewed both the 1956 Plat and the 1959 Resolution. The following is an exchange between Ms. Smith's attorney and Mr. Scott:

Q. The resolution, the 1959 resolution that I had which makes the reference to accepting all things that have been platted, is -- does that meet your criteria for the County accepting the property?

A. Yes, sir, it does.

Q. Is there any other document -- you know, Mr. Boyd [the Berrys' attorney] -- you heard him make reference of a deed to the property. At that time is that the way that business was conducted?

A. Based on my review of records in Hawkins County, that's correct, yes, sir.

Q. Would that be the resolution, is how they are accepted?

A. Yes, sir.

Q. Is there commonly a deed for the roadway that's deeded or at the time were deeds done in order to . . .

A. Well, I've seen those, but as Mr. Bean said, there are a number of county roads that are maintained where those deeds are not -- are not found of record.

Mr. Scott indicated that "records are pretty bleak" when asked how he determines whether a county has accepted a roadway. He further explained:

Sometimes it's hard to find those ordinances where things are either -- where roadways are accepted or they're released back to the adjoining property owners. So in the particular case we would have relied on the plat that said that the County had accepted that road, Hyder Lane.

When asked whether the unpaved portion of Hyder Lane is still part of the right-of-way, Mr. Scott responded: "it's still part of the . . . plat that shows that it was dedicated."

With Mr. Scott's testimony, Ms. Smith rested her case. The Berrys renewed their motion to dismiss. The Trial Court denied the motion, noting that it had found Mr. Scott's testimony persuasive. The Berrys proceeded to present their case.

Ms. Rimer testified that her father, Rowdy Ward, had purchased the property that the Berrys now own and built a home for Ms. Rimer. She lived there with her husband, Eddie Rimer, who built the garage in approximately 1968. She testified that Bob Gilreath told her husband: "If you want to build a garage there, build it. This road will never be open." She reported that "nobody used that road but the ones that lived up there" and opined that the road was not supposed to go farther than the Berrys' property. According to Ms. Rimer, when her husband and she moved there, there "wasn't nothing but a field" and they "had to walk all the way up through there." She stated that they "cleaned it up" themselves and "made us a road," presumably referring to Hyder Lane. Her husband and she eventually sold the property to Clarence and Nellie Christian, who then sold the property to the Berrys. Her brother, Mr. Ward also testified and stated that Hyder Lane was "always private."

Lastly, Ms. Berry testified, explaining that she had grown up in the house next door to her current home. She testified that Hyder Lane had always been a dead end. Her ex-husband and she bought their property, including the garage, from the Christians in 1998.

On August 2, 2022, the Trial Court entered an order, finding that Ms. Smith had a right to use Hyder Lane and ordering that "all obstructions" be removed. The Court made the following findings:

1. That upon Motion of [ ] Eric Todd Linkous, and agreement of the Parties, Eric Todd Linkous is hereby dismissed from this case with prejudice.

2. That Defendants Joshua T. Kegley and Micah Kegley did not appear for this trial.

3. That Plaintiff Priscilla Smith has a right to the road which is the subject of this case by Warranty Deed of record in Deed Book 403, Page 497

which was from the Clemons' whom created the subdivision that contains the road.

4. That the plat which corresponds to Plaintiff's Warranty Deed, Trial Exhibit 2, located in Map Cabinet 3, in Envelope 1100B demonstrates the road which is the subject of this case.

5. That Defendant Sharon Berry owns Lots 44, 45, 46 and 47 which do not include the portion of land which includes the bed of the road.

6. That an Order of Resolution from the Minutes of the County Court of Hawkins County declared, "Be it resolved by the County Court of Hawkins County, Tennessee that, as recommended by the County Superintendent of Highways, all streets and roads which have been heretofore laid out and dedicated to the public use within duly platted subdivisions located in said county shall be taken over by the County Superintendent of Highways and maintained as public roads and streets as expeditiously as the Highway Superintendent is able to commence the working and maintenance of said roads and streets."

7. That through this resolution, and because the road is platted, the road which is the subject of this case is a public road. This fact is additionally proven because no private citizen has been paying tax on the property which contains the road.

8. That once a road becomes irrevocably dedicated to the public, it cannot be lost or forfeited by mere non-use or by the public and is not subject to adverse possession. (Varallo v. Met Government of Nashville and Davidson County).

9. That no proof was presented by any party indicating that the County abandoned the road which is the subject of this case.

10. That the land upon which the Defendant Berry's garage structure is constructed, is a public road.

11. That despite paying County taxes on the building, Defendant Berry does not own the land upon which the building was constructed.

12. That Plaintiff has property within the subdivision which utilizes the road which is the subject of this case and Plaintiff has a right to use the road.

13. That all obstructions to the road are hereby Ordered to be removed by and the road should be opened to the terminus of Plaintiffs' property for her use or her successor in title to use.

The Berrys subsequently filed a motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59. On January 26, 2023, the Trial Court entered an order denying their motion to alter or amend. The Berrys timely appealed, and an agreed order staying the Trial Court's judgment pending the outcome of their appeal was entered.

## Discussion

The Berrys have presented several issues, but we discern that one issue is dispositive of the case and pretermits all the others. This dispositive issue, although not stated exactly as such by the Berrys, is whether the Trial Court erred by not including in the suit as indispensable parties the County and the Clemons heirs as possible owners of Hyder Lane. Upon our review of the record, we conclude that the Trial Court erred by adjudicating this case without adding the County and the Clemons heirs as indispensable parties.

Tennessee Rule of Civil Procedure 19.01 generally governs the joinder of indispensable parties and provides as follows:

A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

This Court has previously explained the operation of Rule 19.01, particularly in the context of land disputes, as follows:

We note that the language of Rule 19 is mandatory and directive; one who is an indispensable and necessary party "*shall* be joined as a party." TENN. R. CIV. P. 19.01 (emphasis added). The requirement of joinder of indispensable and necessary parties "appears absolute and inflexible," and applies to both trial courts and appellate courts. *Pope v. Kelsey*, No. 86-17-II, 1986 WL 6564, at *2 (Tenn. Ct. App. June 13, 1986),

*no perm. app.* (quoting *Glickauf v. Moss*, 23 Ill. App. 3d 679, 320 N.E.2d 132, 135-316 (Ill. 1974)). When an indispensable and necessary party has not been joined, neither the trial court nor the appellate court may proceed further with the matter. *Id.* The parties are of course obliged to bring to the court's attention the necessity of such a joinder; however, even if the parties fail to do so, the trial court or even the appellate court must *sua sponte* enforce this principle of law. *Id.* (quoting *Glickauf*, 320 N.E.2d at 135-36).

Persons whose real property interests may potentially be affected by a trial court's ruling have consistently been recognized as indispensable and necessary parties. *See Roberts v. England*, No. M1999-02688-COA-R3-CV, 2001 WL 575560, at * 2 (Tenn. Ct. App. May 30, 2001), *no perm. app.* (citing *Citizens Real Estate & Loan Co., Inc.* [*v. Mountain States Dev. Corp.*], 633 S.W.2d [763] at 764-66 [(Tenn. Ct. App. 1981)]; *Lee v. Brown*, No. 89-230-II, 1989 WL 147497, at *1 (Tenn. Ct. App. Dec. 8, 1989), *no perm. app.*; *Stuart v. City of White Pine*, No. 57, 1988 WL 86585 (Tenn. Ct. App. Aug. 19, 1988), *no perm. app.*; *St. Clair v. Evans*, No. 829, 1988 WL 102767, at *2 (Tenn. Ct. App. Oct. 6, 1988), *aff'd on app. after remand*, 872 S.W.2d 49 (Tenn. Ct. App. 1993); *Carpenter v. Yount*, No.14, 1986 WL 10150, at *3-4 (Tenn. Ct. App. Sept. 19, 1986), *no perm. app.*).

In *Roberts*, the Court noted that the appropriate inquiry to determine if an adjoining landowner is an indispensable and necessary party is "whether any resolution of the issues presented in the lawsuit could have affected" the adjoining landowner's real property interest, not whether the trial court's final ruling actually affected the adjoining landowner. *Id.* at *4 (emphasis added). Thus, the joinder should occur when there is some indication in the record that an identifiable landowner exists whose interests might be affected by the lawsuit, even if it appears likely that the third party landowner might agree with the trial court's judgment. *See id.* at *3 (citing *Lee*, 1989 WL 147497, at *1; *St. Clair*, 1988 WL 102767, at *2).

In cases in which the appellate court has found that an adjoining landowner is an indispensable and necessary party and was not joined in the proceedings below, the appellate court has vacated the judgment of the court below and remanded the case with instructions to ensure that all proper parties are joined before a final determination is made of the property owners' rights. *Id.* at *3. The purpose of the remand is not for a trial *de novo*; rather, the purpose is to join the absent third parties and give them the opportunity to present new evidence as deemed necessary by the trial court. *See id.* at *4.

*Baker v. Foster*, No. W2009-00214-COA-R3-CV, 2010 WL 174773, at \*4-5 (Tenn. Ct. App. Jan. 20, 2010).

The subject of this dispute is the unfinished portion of Hyder Lane. Based upon the evidence at trial, there are at least three potential owners of the property that constitutes Hyder Lane: the Berrys, the County, and the Clemons heirs. The Berrys claimed ownership by adverse possession of the portion of Hyder Lane upon which their garage is situated. Ms. Smith claimed that the County owned Hyder Lane based upon the 1956 Plat and 1959 Resolution, thereby permitting her public access to her property. Lastly, if the County does not own the undeveloped portion of Hyder Lane, it would appear that the Clemons heirs may own the property that constitutes that part of Hyder Lane.

We recognize that the Berrys argue that the Trial Court's final judgment is in substance a declaratory judgment and that therefore the Declaratory Judgment Act's standard for joinder of indispensable parties should apply. In their appellate briefs, the Berrys cite both to the general procedure for joinder in Tennessee Rule of Civil Procedure 19.01 and to the Declaratory Judgment Act, Tenn. Code Ann. § 29-14-107(a). We note that this Court has previously explained the difference between Rule 19.01 and Tenn. Code Ann. § 29-14-107(a) as follows:

> Rules 19.01 and 19.02 establish general procedural rules for requiring the joinder of indispensable parties in all types of cases. Parties seeking declaratory relief must also satisfy the more specific requirements of the Declaratory Judgments Act before the courts have jurisdiction to grant declaratory relief.
>
> Because of the nature of declaratory relief, the Declaratory Judgments Act makes it incumbent that every person having an affected interest be given notice and an opportunity to be heard before declaratory relief may be granted. The Declaratory Judgments Act imposes stricter requirements than those imposed generally by Tennessee Rules of Civil Procedure 19.01 and 19.02. While joinder may not be required under Rules 19.01 and 19.02, it is clearly required in a suit for declaratory relief pursuant to Tennessee Code Annotated, Section 29-14-107(a) which provides that: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to those proceedings."

*Huntsville Util. Dist. of Scott Cnty., Tenn. v. Gen. Tr. Co.*, 839 S.W.2d 397, 403 (Tenn. Ct. App. 1992) (finding that joinder was necessary both under the general principles of Rule 19.01 and the Declaratory Judgment Act). We conclude that the County and the

Clemons heirs are indispensable parties under either Rule 19.01 or Tenn. Code Ann. § 29-14-107(a).

Keeping in mind the legal principle already set forth that parties "whose real property interests may potentially be affected by a trial court's ruling have consistently been recognized as indispensable and necessary parties," *see Baker,* 2010 WL 174773 at *5, we conclude that the County and the Clemons heirs were necessary parties to this suit. The effect of the Trial Court's judgment is that the County, whether it wanted to be or not, has now been confirmed as the owner of Hyder Lane. The County, of course, may not be interested in or desire ownership of Hyder Lane. Even assuming that the County is content with the outcome of this litigation and its ownership of Hyder Lane, its interests could have been adversely affected if the Trial Court had determined that Hyder Lane was not a public road. *See Roberts v. England*, No. M1999-02688-COA-R3-CV, 2001 WL 575560, at *4 (Tenn. Ct. App. May 30, 2001) ("The appropriate inquiry is not whether the court's final decision affected a nonparty's real property interest; the question is whether any resolution of the issues presented in the lawsuit could have affected another landowner."). As this Court noted in *Baker*, joinder should occur "even if it appears likely that the third party landowner might agree with the trial court's judgment." *Baker*, 2010 WL 174773, at *5. Yet, here, the County was not a party and therefore did not have the opportunity to present evidence to support its interests one way or another.

With respect to the Clemons heirs, we note the Trial Court's oral ruling and apparent struggle with this issue. The Trial Court rightly noted that if the County had never accepted the offer to make Hyder Lane a public road, then "that land that was never conveyed in any of those Clemmons deeds [land platted as Hyder Lane] is still owned by the Clemmons heirs" and "if there is a claim of adverse possession to the bed of that road it would have to be asserted against the Clemmons heirs instead of Ms. Smith." The Court, clearly concerned that the County and the Clemmons heirs were not parties, also noted:

Let's say that I find that the attempted dedication to public use did not take, so to speak . . . and that it -- that land since it was never deeded to anybody, the record owners of same would be the heirs of Clemmons. They're not parties to this. And then I would have to find under Ms. Berry's theory of the case I would have to find that she adversely -- she and her predecessors in title adversely possessed successfully against the heirs of Clemmons. And then I would have to find that your client is entitled to condemn a statutory road down across that. I mean, there's more twists and turns in this thing than anything I ever saw.

- 11 -

But I guess as I've gone through this the Court's become increasingly worried that we don't have the County and the Clemmons heirs in -- in this thing.

As indicated on the 1956 Plat, a portion of the Clemons subdivision is platted as Hyder Lane. Therefore, if the County is not the owner, then the Clemons heirs likely would be the owners and obviously have an interest at stake that "may potentially be affected by [the] trial court's ruling." *See id.* We further note that given that this lawsuit involved an adverse possession claim by the Berrys, it is necessary for the true owner of the property that constitutes the undeveloped portion of Hyder Lane, which may or may not be the Clemons heirs, to be a party to the lawsuit. *Milledgeville United Methodist Church v. Melton*, 388 S.W.3d 280, 288 (Tenn. Ct. App. 2012) ("[T]he party who is in actual possession of the property must bring a suit against the true owner, an indispensable party, to quiet title by proving that the elements of adverse possession have been met.").

Because the County and the Clemons heirs are parties whose potential property interests were the subject of this lawsuit and trial, we conclude that they are indispensable parties, without which "no valid decree" "settling the rights between the parties that are before the Court" could be entered. *Brewer v. Lawson*, 569 S.W.2d 856, 858 (Tenn. Ct. App. 1978). We therefore vacate the Trial Court's judgment and remand for the joinder of the County and the Clemons heirs in order that they may have the opportunity to present evidence in support of their interests as explained in *Baker v. Foster*.

## Conclusion

Having concluded that the County and the Clemons heirs are indispensable parties, we vacate the Trial Court's judgment and remand for the joinder of the County and the Clemons heirs to allow them an opportunity to present evidence. Costs on appeal are taxed equally to the appellants, Michael Berry and Sharon Berry, and to the appellee, Priscilla Smith.

_____
D. MICHAEL SWINEY, CHIEF JUDGE